UNITED STATES, Appellee

v

DENNIS P. MORISSEAU, Airman,
U. S. Air Force, Appellant

19 USCMA 17, 41 CMR 17

No. 22,250

October 10, 1969

*Colonel Bertram Jacobson* and *Major John T. Dorman* were on the pleadings for Appellant, Accused.

*Lieutenant Colonel Robert W. Vayda* and *Major Donald B. Strickland* were on the pleadings for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

A general court-martial convicted Morisseau of escape from lawful confinement and the theft of four checks from the on-post mailboxes of other members of the Air Force—offenses that have obvious service-connection. O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969). Our inquiry in this case is directed to whether the court-martial had jurisdiction over the forgery of a United States Treasury Check, No. 4,041,584, in the amount of $81.85, payable to the order of Edward J. Detelj, CMR Box No. 2813, Griffiss Air Force Base, New York, as alleged in the specification under Additional Charge IV.

Driving a late model automobile and wearing civilian clothes, the accused entered a service station managed by Mr. Angelo DePasquale and requested the latter to cash a check. Asked for identification, the accused—then unknown—replied that he had left it at the base and was in a rush going on leave. Morisseau endorsed the check in the name of the payee. DePasquale "took this man's word that he was military" and cashed the instrument. The bank later returned it dishonored.

In United States v Peak, 19 USCMA 19, 41 CMR 19, we affirmed a conviction for the wrongful appropriation of an automobile when the accused, dressed in fatigues, appeared at a used-car lot, identified his unit, and obtained a car for a test drive. He never returned. Because the dealer attributed reliability to the accused from his military dress, we considered the crime service-connected and, therefore, triable by court-martial. The same element of representation is found here. In this instance, Morisseau caused reliance by telling the station manager his identification was on base and that he was going on leave. His military status was both obvious and emphasized. These facts make the crime service-connected and thereby triable by court-martial under the standard set forth in O'Callahan v Parker, supra.

Every offense is service discrediting to some extent. That an offense is triable under Article 134, Uniform Code of Military Justice, does not, from that circumstance alone, permit continued military jurisdiction under the decision in *O'Callahan*. Our concern here is not with which article of the Code the offense should be tried under. Instead we are assessing the facts only for their determination of jurisdiction. Nothing in the *O'Callahan* opinion suggests that service-connection cannot be judged on the basis of whether the acts constituting the offense also establish service-connection.

United States v Williams, 18 USCMA 605, 40 CMR 317, involving the cashing of a check to satisfy a grocery account, is distinguishable. There the record fails to show that Williams's military status influenced the grocer's act.

Accordingly, the decision of the board of review is affirmed.

QUINN, Chief Judge (concurring in the result):

I agree that when the offense is committed against a serviceman the act is service-connected. The offense here is further connected with the military because the stolen check is a military payroll check. In my opinion, forgery of that check involves "the integrity of military property" within the meaning of O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969). For these reasons, I join in the conclusion that the court-martial had jurisdiction over Additional Charge IV.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

We granted review in this case to determine the validity of the accused's conviction for forgery (Additional Charge IV) by general court-martial, in light of the Supreme Court's decision in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

The other offenses of which the accused was convicted, escape from lawful military confinement and the theft of four checks of other servicemen from their mailboxes at Griffiss Air Force Base, New York, were obviously "service connected," since they involved the "security of a military post." O'Callahan v Parker, supra, 395 US, at page 274. Hence, they were triable by court-martial.

The record reflects that United States Treasury check number 4,041,584, in the amount of $81.85, payable to the order of Edward J. Detelj, CMR Box #2813, Griffiss Air Force Base, New York, was cashed at the Working Man's Friend Oil Company, 819 West Dominick Street, Rome, New York, sometime between the 4th and the 9th of October 1968. It was endorsed in the name of the payee and subsequently counter-endorsed by A. DePasquale. Mr. DePasquale testified that a young man he did not know, driving a late model automobile and wearing civilian clothes, entered his service station and requested him to cash the check. When asked for identification, the unknown individual stated that he had left it at the base and that he was in a rush as he had to go on leave. When DePasquale agreed to cash the check, the endorsement was made by the individual in his presence. When his bank returned the check, they informed him that the person who cashed the check

was not the owner. DePasquale identified the accused as the person who endorsed the check and cashed it at his station.

We deal only with the forgery, specified in Additional Charge IV, as the *theft* of this check was included among the "service connected" convictions mentioned above. They are separately proved and punishable offenses. Cf. United States v Weaver, 13 USCMA 147, 32 CMR 147. Since the offense specified herein comes within the purview of Title 18, § 471, United States Code, it is an offense cognizable in the district courts of the United States. The forgery was perpetrated in the civilian community and a civilian was victimized thereby. In my opinion, the record of trial discloses *no* circumstances surrounding the commission of the offense of forgery to relate it specifically to the military. Lacking the necessary "service connection," the offense was not triable by court-martial. O'Callahan v Parker, supra. See also United States v Borys, 18 USCMA 547, 40 CMR 259.

The author of the principal opinion finds a service-connection in the fact that DePasquale "took this man's word that he was military" and cashed the check. But reliance on one's *status* as a serviceman is not an element of the offense of forgery. The matter is simply irrelevant to the charge. It cannot be the vehicle for conferring jurisdiction on a court-martial any more than the *status* of the accused in *O'Callahan* or *Borys* conferred jurisdiction in those cases.

An offense which reflects discredit upon the armed forces is properly chargeable *only* under Article 134 of the Code. Offenses chargeable under that Article are exclusive of those specified in other sections of the Code. Forgery is defined in Article 123. A violation of that Article is not at the same time a violation of Article 134. United States v Norris, 2 USCMA 236, 8 CMR 36. Cf. United States v Johnson, 3 USCMA 174, 11 CMR 174; United States v Rowe, 13 USCMA 302, 32 CMR 302. The fact of discredit upon the armed forces plays no part in any criminal conduct, no matter how heinous, except where the offense lies only under Article 134. It cannot, therefore, be used as a vehicle to grant military jurisdiction over an offense which is not otherwise "service connected." O'Callahan v Parker, supra. See also my dissent in United States v Peak, 19 USCMA 19, 41 CMR 19.

I would reverse the conviction for forgery and the sentence and order the charge and its specification dismissed. I would also direct that a rehearing on sentence on the basis of the remaining findings of guilty may be ordered.