UNITED STATES, Appellee

v

STEPHEN A. HALLAHAN, Private,
U. S. Army, Appellant

19 USCMA 46, 41 CMR 46

No. 22,229

October 24, 1969

*Colonel Daniel T. Ghent, Captain Lee A. Rau,* and *Captain Robert B. Harrison, III,* were on the pleadings for Appellant, Accused.

*Colonel David T. Bryant, Major Edwin P. Wasinger, Major R. Kevin McHugh,* and *Captain Mark Rosenberg* were on the pleadings for Appellee, United States.

## Opinion

DARDEN, Judge:

Accused's convictions, pursuant to his plea of guilty, include the theft of a checkbook containing thirteen personalized blank checks issued by the Bank of Naperville, Illinois, on account number 981–642–6, assigned to James S. Williams, Jr. (Charge I), the forgery of three checks (Charge III, specifications 1–3), and the uttering of ten forged checks (Charge III, specifications 4–13). We granted review to consider the effect of the Supreme Court's recent opinion in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), on the utterings alleged in specifications 4 through 8 of Charge III.

In numerical order these specifications allege the uttering of a forged $100.00 check on July 22, 1968, at Augusta, Georgia, made payable to the accused; a $101.85 check on July 30, 1968, at Augusta, made out to Eastern Airlines; one for $10.00 on August 29, 1968, at Atlanta, payable to Delta Air Lines; another for $48.30 uttered on this same day, in Augusta, to Delta; and a $10.00 check on August 30, 1968, at Hagerstown, Maryland, payable to Allegheny Commuter Air Line.

According to a stipulation of fact entered into the record, Williams attended a school for reserve signal officers at Fort Gordon, Georgia, during a two-week period beginning June 30, 1968, and ending July 14, 1968. While in attendance, Williams lost his checkbook and the thirteen checks. They were found and used by the accused.

The stipulation further shows that the accused uttered the $100.00 check

46

alleged in specification 4 at the Fort Gordon branch of the Georgia Railroad and Trust Company. This transaction thus appears to have taken place at a base facility. A forged check uttered on post is service-connected within the meaning of O'Callahan v Parker, supra, and the court-martial has jurisdiction to try the accused for this act. United States v Williams, 18 USCMA 605, 40 CMR 317.

The $101.85 check set forth in specification 5, the $48.30 check made payable to Delta in specification 7, and the $10.00 check to Allegheny in specification 8 all bear endorsements that include a military address. These utterings are, therefore, triable by court-martial for it appears that each was successfully cashed because Hallahan's victims were made aware of and placed reliance on his military status. United States v Morisseau, 19 USCMA 17, 41 CMR 17. The one remaining $10.00 check to Delta described in specification 6 reflects nothing that would associate the accused with the military, nor does it appear to have been passed on post. Williams, by this time, had returned to civilian life. Under these circumstances the accused's conviction of specification 6 must fall. United States v Williams, supra.

Accordingly, the accused's conviction under specification 6 of Charge III and the sentence are reversed and the specification is ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army. The Court of Military Review may reassess the sentence on the basis of the remaining findings of guilty.

QUINN, Chief Judge (concurring in part and dissenting in part):

I would affirm all the findings of guilty on the basis of my opinion in United States v Borys, 18 USCMA 547, 40 CMR 259.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I concur in the affirmance of the accused's conviction under specification 4, Charge III, and the reversal of his conviction under specification 6, Charge III, for the reasons stated in the principal opinion. However, since I do not believe that the offenses of which the accused was convicted under specifications 5, 7, and 8, also of Charge III, were "service connected" within the meaning of O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), I must dissent from my brothers' affirmance thereof.

Since the accused pleaded guilty as charged, the facts and circumstances surrounding these offenses were made a part of the record of trial by receipt in evidence of a stipulation of fact (Prosecution Exhibit 2). Briefly stated, it appears that the accused found the personal checkbook of one James S. Williams, Jr., which the latter had lost while attending a school for reserve signal officers at the U. S. Army Southeastern Signal School, Fort Gordon, Georgia. Since the accused appropriated the checks to his own use he was charged with the offense of larceny (Charge I). Thereafter, according to Charge II, he altered his own social security card to reflect the name of Williams, and made three separate applications for military identification cards, also in Williams' name. Charge III contains thirteen specifications (numbers 1 through 3 alleging forgery and numbers 4 through 13 alleging uttering) of making and passing false instruments by use of the personalized checks of James S. Williams, Jr. We granted review to determine the validity of the accused's conviction under specifications 4 through 8, Charge III, in light of the Supreme Court's decision in O'Callahan v Parker, supra.

While specification 4 charges that the check referred to therein, dated July 22, 1968, payable to the accused as payee and signed James S. Williams, Jr., was uttered "at Augusta, Georgia," the stipulation reflects that it was, in fact, negotiated "at the Fort Gordon Branch of the Georgia Railroad Bank and Trust Company where he received $100.00 in United States Currency

**47**

which he appropriated to his own use." Since the offense was committed at a base facility, the court-martial had jurisdiction thereof. United States v Williams, 18 USCMA 605, 40 CMR 317. Cf. United States v Allen, 19 USCMA 31, 41 CMR 31.

With reference to specifications 5, 6, 7, and 8, the stipulation reflects the following:

"On 30 July 1968, the accused forged another of the checks in the amount of $101.85. The accused made this check payable to Eastern Airlines for the purchase of a ticket to Boston, Massachusetts with a delay enroute at Hagerstown, Maryland and signed the check with the signature of James S. Williams, Junior. [Specification 5.] The accused used the ticket purchased with the forged check to travel from Augusta, Georgia to Boston, Massachusetts with a delay enroute at Hagerstown, Maryland.

"On 29 August 1968, Private Hallahan again used one of the stolen checks to purchase an airline ticket to Hagerstown, Maryland. The accused forged a check in the amount of $48.30 payable to Delta Air Lines. The accused signed the check with the signature of James S. Williams, Jr. [Specification 7.] After arriving at Atlanta, Georgia on this flight, the accused forged another check dated 29 August 1968, payable to Delta Air Lines in the amount of $10.00 and signed with the signature of James S. Williams, Junior. [Specification 6.] The accused received $10.00 in United States Currency which he appropriated to his own use. Again on 30 August 1968, at Hagerstown, Maryland, the accused forged another of the stolen checks in the amount of $10.00. This check made payable to Allegheny Commuter Air Line and was signed by the accused with the signature of James S. Williams, Junior. [Specification 8.]"

The author of the principal opinion finds a "service connection" in the utterings alleged in specifications 5, 7,

and 8, on the ground that since each bore an endorsement that included a military address, Hallahan's victims were made aware of and placed reliance on his military status at the time the checks were cashed. Affirmance of accused's conviction on these specifications is based on this factor. Inasmuch as no such evidence was apparent with reference to specification 6, that conviction was reversed.

While it is true that the checks in specifications 5, 7, and 8 contained military identification data on the reverse side, it is simply pure speculation to assume that this data aided the accused in victimizing the various payees. There is no evidence of this fact in the record and, in my opinion, such a presumption is wholly unwarranted. But even were it so, reliance on one's *status* as a serviceman is not an element of the offense of uttering a false instrument. The matter is simply irrelevant to the charge. It cannot be the vehicle for conferring jurisdiction in a court-martial anymore than the status of the accused in *O'Callahan* and *Williams*, both supra, conferred jurisdiction in those cases. See also United States v Borys, 18 USCMA 547, 40 CMR 259.

The apparent rationale behind the use of this factor for affirmance is that it reflects discredit upon the armed forces. But discredit upon the armed forces is properly chargeable *only* under Article 134, Code, supra, 10 USC § 934. Offenses chargeable under that Article are exclusive of those specified in other sections of the Code. Uttering of a false instrument is defined in Article 123, Code, supra, 10 USC § 923. A violation of that Article is not at the same time a violation of Article 134. United States v Norris, 2 USCMA 236, 8 CMR 36. Cf. United States v Johnson, 3 USCMA 174, 11 CMR 174; United States v Rowe, 13 USCMA 302, 32 CMR 302. The fact of discredit upon the armed forces plays no part in any criminal conduct, no matter how heinous, except where the offense lies under Article 134. It cannot, therefore, be used as a vehicle to grant military jurisdiction over an offense which is not otherwise "service con-

nected." O'Callahan v Parker, *supra.* See also my dissents in United States v Morisseau, 19 USCMA 17, 41 CMR 17; United States v Peak, 19 USCMA 19; 41 CMR 19.

The uttering of a false instrument *in the civilian community* is essentially a concern of the State. Congressional power to proscribe criminal conduct in this area is limited. United States v Fox, 95 US 670, 672, 24 L Ed 538 (1878); cf. Screws v United States, 325 US 91, 109, 144, 145, 89 L Ed 1495, 1506, 1525, 1526, 65 S Ct 1031 (1945). Since the *status* of a serviceman, standing alone, is insufficient to vest a court-martial with jurisdiction over a particular offense (O'Callahan v Parker, *supra,* 395 US, at page 267), I do not believe that reliance on that same status is sufficient to justify the incursion of Federal authority into a matter which is primarily the concern of the State. See my separate opinion in United States v Nichols, 19 USCMA 43, 41 CMR 43.

I would reverse the conviction of the accused for the utterings set forth in specifications 5, 7, and 8 of Charge III, and order these specifications dismissed. I would also set aside the sentence and direct that the Court of Military Review may reassess it on the basis of the remaining findings of guilty.