UNITED STATES, Appellant

v

WILLIAM A. PETERSON, Airman First Class,
U. S. Air Force, Appellee

19 USCMA 319, 41 CMR 319

No. 22,446

March 13, 1970

*Major Robert L. Bates* argued the cause for Appellant, United States. With him on the brief was *Colonel James M. Bumgarner.*

*Major Clarence E. Powell* argued the cause for Appellee, Accused. With him on the brief was *Colonel Bertram Jacobson.*

## Opinion of the Court

QUINN, Chief Judge:

By divided vote, the United States Air Force Court of Military Review held that a court-martial could not try the accused for making and uttering a number of checks, with intent to defraud, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a. The checks were issued in the State of California which defines the act as a crime in substantially the same terms of Article 123a. The Court of Military Review concluded that the exercise of court-martial jurisdiction was prohibited by O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), in that the offenses were cognizable in the criminal courts of the State of California and were not "service-connected." It set aside the findings of guilty, predicated upon the accused's plea of guilty, and the sentence and dismissed the charges. Pursuant to Article 67(b)(2), Code, supra, 10 USC § 867, the Judge Advocate General of the Air Force certified the case to this Court to review the following question:

Was the Court of Military Review correct in its conclusion that under the facts and circumstances in this case the bad check offenses in violation of Article 123a were not in any way service-connected?

The *O'Callahan* case indicated that, as a matter of constitutional principle, an act cognizable as a crime in a civilian court and having no service-connection or military significance cannot be tried by court-martial as a violation of the Uniform Code of Military Justice, although the act is also defined as a crime in the Code. The dimensions of this constitutional concept have not yet been fully measured.

This Court has held that an act by a serviceman, in violation of both the Code and a civilian penal code, is, under *O'Callahan,* without military significance and cannot be tried by court-martial, if committed outside the geographic limits of a military base against the person or property of a nonmilitary person. United States v Borys, 18 USCMA 547, 40 CMR 259 (1969); United States v Prather, 18 USCMA 560, 40 CMR 272 (1969); United States v Armstrong, 19 USCMA 5, 41 CMR 5 (1969). Oppositely, it has also held that an act by a serviceman in violation of the Uniform Code which takes place on a military base affects the "security" of the base and is triable by court-martial as a service-connected offense, even though the victim is a civilian and the act contravenes the penal code of the State in which the base is located. United States v Paxiao, 18 USCMA 608, 40 CMR 320 (1969); United States v Allen, 19 USCMA 31, 41 CMR 31 (1969). A third dimension of the principle is measurable by two separate strands of opinion, one predicated upon an interpretation of *O'Callahan* that views the limitation on court-martial jurisdiction as operative only if the offense is also cognizable in a Federal civilian court, as distinguished from a State court (see Chief Judge Quinn's dissent in United States v Borys, su-

pra), and the other founded on the view that an offense is service-connected if the accused's military status was the "moving force" in its commission (see Judge Darden's opinion in United States v Fryman, 19 USCMA 71, 72, 41 CMR 71 (1969), and United States v Frazier, 19 USCMA 40, 41 CMR 40 (1969)). Court-martial jurisdiction over various financial transactions by service persons in violation of the Uniform Code has been measured by one or another of these three standards.

In United States v Williams, 18 USCMA 605, 40 CMR 317 (1969), the accused, as the accused here, was charged with violations of Article 123a. He had cashed two bad checks, with the intent to defraud, at the Fort Bragg post exchange. At his off-base apartment he had issued a third bad check to a civilian creditor. All the checks were drawn on a civilian bank located in the civilian community. We held that, under O'Callahan, the checks cashed on base were service-connected offenses which were triable by court-martial, while the check made and issued in the civilian community to a civilian creditor was not. In United States v Morisseau, 19 USCMA 17, 41 CMR 17 (1969), the accused was charged with cashing, at a service station in the civilian community, a forged United States Treasury payroll check issued to another serviceman. The evidence indicated the check would not have been cashed but for the fact that the accused was a member of the armed forces. We held that the exercise of court-martial jurisdiction was proper. One support for the conclusion was the concept that when military status is the "moving force" in commission of the offense, the act is service-connected; the other was the idea that misapplication of a military payroll check involves what O'Callahan, supra, 395 US, at page 274, described as "the integrity of military property" and is a service-connected offense. In United States v Hallahan, 19 USCMA 46, 41 CMR 46 (1969), the accused uttered a number of forged checks. The checks were drawn on a civilian bank in Illinois. Some were uttered at the Fort Gordon branch of a civilian bank in Georgia.

Since these acts were committed on a military base, we held they were service-connected acts, within the meaning of the O'Callahan case. Other checks were issued in the civilian community; these bore endorsements which included the military address of the accused. The evidence indicated these checks were accepted in "reliance" upon the accused's military status. These circumstances led a majority of the Court to conclude that the offenses were subject to court-martial jurisdiction. The concept of military status as the "moving force" in perpetration of the offenses constituted one support for the decision; the other was the view that the cognizability of the act in a State criminal court did not preclude trial by court-martial for the violation of the Uniform Code. In United States v Fryman, supra, the accused was tried for dishonorable failure to pay a debt. He incurred the debt at a hotel in the civilian community, and the dishonorable failure to pay took place at the same establishment. The exercise of court-martial jurisdiction was sustained by the dichotomous approach expounded in United States v Hallahan, supra.

Each check in this case was issued to a business concern located in the civilian community. If this was the only evidence as to the accused's conduct, it would, as appellate defense counsel maintain, identify the case with United States v Williams, supra, and require a decision that the offenses were not triable by court-martial. There is, however, more evidence. All the checks bore the imprinted name of the accused, together with his Air Force service number and post office box number at Mather Air Force Base, California. It further appears that when the checks were returned to the respective payees for nonpayment, each complained directly to the commander of the accused's squadron. The fair inference from this evidence is that each check was accepted by the named payee in reliance upon the accused's military status. The case is thus distinguishable from United States v Williams, supra, and comes within the ambit of the dual bases for court-martial jurisdiction expounded in

**321**

United States v Hallahan and United States v Fryman, both supra.

A second circumstance distinguishes this case from United States v Williams, supra. In *Williams,* all the essential steps in the commission of the offenses occurred in the civilian community. Here, the evidence as to the intent to defraud rested upon the presumption of the existence of that intent from the fact of nonpayment within five days of receipt of notice that the check had not been paid by the bank on presentment, as authorized by Article 123a, Code, supra. The checks were drawn on a branch of the Bank of America located at Mather Air Force Base, and all were presented to this facility for payment. In United States v Crapo, 18 USCMA 594, 40 CMR 306 (1969), we held that the robbery of a taxi driver which began on a military base and was completed outside the base was an offense against the security of the base and was, under our interpretation of the *O'Callahan* decision, triable by court-martial. The rationale of United States v Crapo, supra, encompasses an offense which originates in the civilian community, but extends, in a substantial and significant way, into a military base. Thus, in United States v Harris, 18 USCMA 596, 40 CMR 308 (1969), the accused was charged with conspiracy to turn over national defense information to a foreign power. The unlawful agreement was made, and the overt act alleged in furtherance of the agreement took place, in the civilian community. However, the conspirators had contemplated that the defense material would consist of military documents that would be acquired by the accused on military installations, and, in fact, the material turned over by the accused to representatives of the foreign power were taken by him from a military base. We held these circumstances established that the offense was service-connected and triable by court-martial. Cf. United States v Riehle, 18 USCMA 603, 40 CMR 315 (1969).

For the reasons indicated, we answer the certified question in the negative, and reverse the decision of the Court of Military Review. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to the Court of Military Review for further proceedings consistent with this opinion.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I disagree with my brothers' negative reply to the certified question which asked whether the Court of Military Review was correct in its conclusion that under the facts and circumstances in this case the bad check offenses, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a, were not in any way service-connected.[1]

Despite the fact that all of the checks were cashed in the civilian community, the majority in this case find a "service-connection" in the commission of these offenses, by inferring from the evidence that the payees of the checks relied on the accused's status as a serviceman when they accepted them. They base this inference on the fact that each of the checks bore the imprinted name of the accused, together with his Air Force service number and post office box number at Mather Air Force Base, California, and the subsequent complaint of nonpayment by each of the payees to the Commander of the accused's squadron. They also believe the offenses were "service-connected" since the checks were all drawn on a branch of the Bank of America located on base at Mather, were presented to that facility for payment, and were thus committed on base.

The same issue was before us in United States v Hallahan, 19 USCMA 46, 41 CMR 46 (1969), where I expressed my dissent to that view. What I said in *Hallahan* is equally applicable here:

---

[1] The Court of Military Review, sitting *en banc,* decided by a 5–2 vote, that the offenses were not service-connected under the jurisdictional standards set forth in O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969).

"While it is true that the checks in specifications 5, 7, and 8 contained military identification data on the reverse side, it is simply pure speculation to assume that this data aided the accused in victimizing the various payees. There is no evidence of this fact in the record and, in my opinion, such a presumption is wholly unwarranted. But even were it so, reliance on one's *status* as a serviceman is not an element of the offense of uttering a false instrument. The matter is simply irrelevant to the charge. It cannot be the vehicle for conferring jurisdiction in a court-martial anymore than the status of the accused in *O'Callahan* and *Williams,* both supra, conferred jurisdiction in those cases. See also United States v Borys, 18 USCMA 547, 40 CMR 259.

"The apparent rationale behind the use of this factor for affirmance is that it reflects discredit upon the armed forces. But discredit upon the armed forces is properly chargeable *only* under Article 134, Code, supra, 10 USC § 934. Offenses chargeable under that Article are exclusive of those specified in other sections of the Code. Uttering of a false instrument is defined in Article 123, Code, supra, 10 USC § 923. A violation of that Article is not at the same time a violation of Article 134. United States v Norris, 2 USCMA 236, 8 CMR 36. Cf. United States v Johnson, 3 USCMA 174, 11 CMR 174; United States v Rowe, 13 USCMA 302, 32 CMR 302. The fact of discredit upon the armed forces plays no part in any criminal conduct, no matter how heinous, except where the offense lies under Article 134. It cannot, therefore, be used as a vehicle to grant military jurisdiction over an offense which is not otherwise 'service connected.' O'Callahan v Parker, supra. See also my dissents in United States v Morisseau, 19 USCMA 17, 41 CMR 17; United States v Peak, 19 USCMA 19, 41 CMR 19.

"The uttering of a false instrument *in the civilian community* is essentially a concern of the State. Congressional power to proscribe criminal conduct in this area is limited. United States v Fox, 95 US 670, 672, 24 L Ed 538 (1878); cf. Screws v United States, 325 US 91, 109, 144, 145, 89 L Ed 1495, 1506, 1525, 1526, 65 S Ct 1031 (1945). Since the *status* of a serviceman, standing alone, is insufficient to vest a court-martial with jurisdiction over a particular offense (O'Callahan v Parker, supra, 395 US, at page 267), I do not believe that reliance on that same status is sufficient to justify the incursion of Federal authority into a matter which is primarily the concern of the State. See my separate opinion in United States v Nichols, 19 USCMA 43, 41 CMR 43." [*Ibid.,* at pages 48, 49.]

The fact that the bank on which the checks were drawn had a branch located on base, through which the checks were processed, does not change the situation. The offenses were complete at the time the checks were uttered. The on-base location of the bank was irrelevant to the commission of the offense. In my opinion, this circumstance is no different from that which we found in United States v Riehle, 18 USCMA 603, 40 CMR 315 (1969), where we held that the fact that a car stolen in the civilian community was brought on base, where it was ultimately located, was insufficient to vest in the court-martial jurisdiction over the offense.

I would answer the certified question in the affirmative.