UNITED STATES

v.

Richard L. GILLINGHAM, 536 62 7423, Private First Class (E–2), U. S. Marine Corps.

NCM 76 1121.

U. S. Navy Court of Military Review.

Sentence Adjudged 2 March 1976.

Decided 30 July 1976.

CDR A. W. Eoff, II, JAGC, USN, Appellate Defense Counsel; LT Patrick A. Fayle, JAGC, USN, Appellate Government Counsel.

Before NEWTON, FULTON and GLADIS, JJ.

GLADIS, Judge:

Consonant with his pleas appellant was convicted by a general court-martial consisting of military judge alone of an unauthorized absence of nine days, five specifications alleging larceny, one specification alleging wrongful appropriation and two specifications alleging forgery in violation of Articles 86, 121, and 123, 10 U.S.C. §§ 886, 921, 923, UCMJ. The convening authority approved the adjudged sentence to dishonorable discharge, confinement at hard labor for fourteen months, reduction to pay grade E–1, and total forfeitures, but in accordance with the pretrial agreement suspended confinement in excess of ten months.

Appellant has assigned the following errors:

I. SPECIFICATIONS 1, 2, 4 AND 5 OF CHARGE I ARE LARCENYS [sic] WHICH OCCURRED AT THE SAME TIME AND AT THE SAME PLACE AND SHOULD HAVE BEEN CHARGED AS ONE OFFENSE. PARAGRAPH 200a(8), MCM, 1969 (REV.).

II. IN VIEW OF THE ERROR OUTLINED IN ASSIGNMENT I, THE CORRECT MAXIMUM PUNISHMENT FOR THE OFFENSE TO WHICH THE APPELLANT ENTERED A PLEA OF GUILTY INCLUDED 18 YEARS AND 6 MONTHS OF CONFINEMENT AT HARD LABOR AND NOT 29 YEARS AND 6 MONTHS AS HE WAS ADVISED.

III. APPELLANT'S PLEAS OF GUILTY WERE IMPROVIDENT WHEN BASED UPON SUBSTANTIAL ERROR IN THE MAXIMUM PUNISHMENT AS EXISTED IN THIS CASE. *UNITED STATES v. HARDEN*, 1 M.J. 258 (1976).

IV. THE PRETRIAL AGREEMENT WAS NOT VOLUNTARILY ENTERED INTO BY APPELLANT WHERE SUCH A SUBSTANTIAL ERROR IN THE CORRECT MAXIMUM PUNISHMENT EXISTED.

In addition we note that specifications 1 and 3 under Charge III involve off-base forgeries of fellow Marines' signatures on military payroll checks and shall consider whether there was court-martial jurisdiction over the forgery offenses.

I

*Multiplicity of Larceny Charges*

◼ On 21 January 1976 appellant stole a calculator belonging to First Sergeant G_____ from the desk of Sergeant G_____ located in the office in the squadron's hang-ar (Charge II, specification 1), went into Colonel G_____'s office in the squadron hangar, opened up Colonel G_____'s desk, and stole a tape recorder belonging to the Government from the desk. (Charge II, specification 2). On the same date he also stole a U.S. Government payroll check payable to C_____ and a U.S. Government payroll check payable to J_____ from the squadron office safe. (Charge II, specifications 4 and 5).

Paragraph 200a(8), MCM, 1969 (Rev.), states that when a larceny of several articles is committed at substantially the same time and place, it is a single larceny even though articles belong to different persons. Thus, if a thief steals a suitcase containing the property of several persons or goes into a room and takes property belonging to various persons, there is but one larceny, which should be alleged in but one specification. *Ibid.*

Applying the foregoing *Manual* provision to the facts of the case *sub judice* the larcenous taking of the tape recorder from Colonel G_____'s desk in his office is clearly not multiplicious with the larcenous takings of the calculator and checks from another office. The takings did not occur in a single room. This Court has held that theft of property belonging to two owners from three separate offices on the same date was properly considered as three separate offenses, *United States v. Bowers*, No. 74 0379 (N.C.M.R. 7 June 1974). In *United States v. Shifflett*, 38 C.M.R. 750 (N.B.R. 1968), the board of review held that a separate and distinct theft arises with each larcenous taking from a separate locale or structure of different ownership—notwithstanding the fact that the multiple takings may occur in the same vicinity and in a single venture under one continuous impulse. In the case at hand the record establishes that the theft of the calculator was separate and did not result from the same impulse which motivated the other thefts.[1] Appellant entertained more than

---

1. The military judge's inquiry into the providence of appellant's pleas includes the following:

"MJ: On 21 January 1976, did you take a Sears M8 calculator?
ACC: Yes, sir.

one impulse and could have terminated his course of criminal conduct after stealing the calculator from the squadron office and before entering Colonel G_____'s office. *Cf. United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971); *United States v. Clason,* 48 C.M.R. 453 (N.C.M.R.1974). Accordingly specification 2, the larcenous taking of the tape recorder is a separate offense for the purpose of punishment. We hold that the larcenous taking of the checks from the safe is multiplicious with the theft of Sergeant G_____'s calculator from the same office. Paragraph 200a(8), M.C.M., 1969 (Rev.). Although this result does not necessarily follow from the foregoing discussion we shall not speculate as to the chronological order of events in order to find the taking of the checks and calculator to be separate offenses.[2] Therefore we shall treat specifications 1, 4 and 5 under Charge II as one offense for punishment purposes.

## II

### *Providency of Pleas*

■ Considering specifications 1, 4 and 5 under Charge II as multiplicious for sentencing purposes, the correct maximum punishment for the offenses to which appellant entered pleas of guilty included confinement at hard labor for twenty-three years and not twenty-nine years and six months as he was advised. Appellant contends that his pleas were improvident because they were based upon a substantial misunderstanding of the maximum punishment, citing *United States v. Harden, supra.* In a case involving multiplicious offenses a plea of guilty will be held improvident only if it is predicated on a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject. *United States v. Anderson,* No. 76 0283 (N.C.M.R. 25 June 1976); *see also United States v. Windham,* 15 U.S.C.M.A. 523, 36 C.M.R. 21 (1965); *United States v. Towns,* 22 U.S.C.M.A. 600, 48 C.M.R. 224 (1974); *United States v. Harden, supra.* The pivotal question in such a case becomes just what is a substantial misunderstanding. *United States v. Anderson, supra.* The standard as to what is a substantial misunderstanding is elastic and not subject to a fixed formula.[3] Unit-

MJ: Where did you take it from:
ACC: I took it from First Sergeant G_____'s desk, sir.
MJ: And where is that located?
ACC: That's located in VMFA–531's squadron hangar, sir; in the office.

. . . . .

MJ: And did you know who the calculator belonged to?
ACC: Yes, sir.
MJ: Who did it belong to?
ACC: First Sergeant William M. G_____.

. . . . .

MJ: Did you, in fact, take a Sony cassette tape recorder, Model TC–42 on 21 January 1976?
ACC: Yes, sir.
MJ: Where did you take it from?
ACC: I took it from Lieutenant Colonel G_____'s desk, sir, at VMFA–531, located at MCAS El Toro.

. . . . .

MJ: Would you tell me what happened? How did you get it?
ACC: Well, sir, when I was up in the office at the same time I took Sergeant G_____'s calculator, I went into Colonel G_____'s of-fice and opened up his desk, and took out the recorder, and took it with me, too, sir.
MJ: Did you know who owned the recorder?
ACC: Yes, sir.
MJ: Do you know who had possession of the recorder:
ACC: Yes, sir.
MJ: Who owned the recorder?
ACC: The Government did, sir.
MJ: And who had possession of it?
ACC: Lieutenant Colonel G_____, sir."

**2.** The record does not indicate the exact time that the checks were taken in relation to the taking of the calculator. We shall resolve the ambiguity in favor of the accused and assume that appellant stole the checks, alleged to have been property of the U.S. Government, from the same office about the same time that he stole First Sergeant G_____'s calculator.

**3.** An elastic standard can produce different results in seemingly similar cases. *United States v. Harden, supra.* Judge Gregory provides an excellent analysis of the cases in *United States v. Anderson, supra,* and *United States v. Tenney,* 1 M.J. 965 (N.C.M.R.1976).

ed States v. Harden, supra, 1 M.J. at 259, United States v. Anderson, supra.

Cases in which the accused misunderstood the maximum confinement authorized and the Court of Military Appeals held pleas to be improvident include *United States v. Towns, supra* (one year confinement legal vice five years believed authorized by the accused); *United States v. Harden, supra* (ten years vice twenty); *United States v. Bowers,* 1 M.J. 200 (1976) (fifteen years vice thirty). However, in *United States v. Kilgore,* 22 U.S.C.M.A. 67, 46 C.M.R. 67 (1975), the Court held ·the difference between twenty-two years and twenty-six and one-half years to be *too slight to justify* reassessment and found the accused's guilty pleas provident, noting that it was most unlikely that punishment for the multiplicious offenses played any appreciable part in his decision to offer to plead guilty.

■ Appellant's third and fourth assignments of error lack merit. Appellant's misunderstanding of the maximum allowable confinement was not substantial in this case. As in *Kilgore* it is most unlikely that punishment for the multiplicious offenses played any appreciable role in his decision to plead guilty. *See United States v. Wilder,* No. 76 0484 (N.C.M.R. 13 July 1976); *United States v. Anderson, supra; United States v. Tenney, supra. Cf. United States v. Zehendner,* No. 76 0400 (N.C.M.R. 14 July 1976). He offered to plead guilty in exchange for a pretrial agreement which provided for suspension of confinement at hard labor in excess of ten months. We believe that he would have negotiated the same pretrial agreement had he known the maximum legal confinement imposable to ̄be twenty-three years vice twenty-nine and one-half years. Accordingly, we find that the pleas of appellant to be provident and his pretrial agreement voluntary.

### III

#### Jurisdiction Over Forgery Offenses

Appellant was convicted pursuant to his pleas of forgery of the payees' signatures to the U.S. payroll checks which are also the subjects of larceny specifications 4 and 5 under Charge II. The forgeries of fellow Marines' signatures are alleged to have occurred en route from Orange County, California to Seattle, Washington.[4] In *United States v. Uhlman,* 1 M.J. 419 (C.M.A.1976) the Court of Military Appeals held that off-base forgery of a personal check drawn on a civilian bank and stolen from a service member is not service-connected and therefore not subject to court-martial jurisdiction. *See O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *Relford v.ⱼ Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

■ The issue in this case is whether off-base forgery of an endorsement on a U.S. Treasury payroll check stolen from the possession of the U.S. Government is service-connected within the meaning of *O'Callahan v. Parker, supra.* Another panel of this Court recently held that off-base forgery of a treasury check was not service-connected, citing *United States v. Uhlman, supra,* and noting the only significant difference between the facts in that case and those in *Uhlman* was that in the latter case the check was one drawn on a civilian bank. *United States v. Dunagan,* No. 76 1323, (N.C.M.R. 25 June 1976). The distinction between off-base forgery of a serviceman's signature on a personal check stolen from him and off-base forgery of the payee's signature on a U.S. Treasury check stolen from the Government is, indeed, significant and, in our view, leads to the inescapable conclusion that the latter forgery is service-connected.[5]

In determining whether an offense is service-connected in cases in which court-martial jurisdiction is challenged, the U.S. Su-

---

4. The Government elected to withdraw uttering offenses involving those checks with prejudice.

5. *Cf. United States v. Stewart,* 1 M.J. 750 (A.F.C.M.R.1975) decided before *United States v. Uhlman, supra.*

preme Court takes an *ad hoc* approach, weighing the following significant factors which bear upon the issue. *Relford v. Commandant; O'Callahan v. Parker, supra.*

1. The serviceman's proper absence from the base.

2. The crime's commission away from the base.

3. Its commission at a place not under military control.

4. Its commission within our territorial limits and not in an occupied zone of a foreign country.

5. Its commission in peacetime and its being unrelated to authority stemming from the war power.

6. The absence of any connection between the defendant's military duties and the crime.

7. The victim's not being engaged in the performance of any duty relating to the military.

8. The presence and availability of a civilian court in which the case can be prosecuted.

9. The absence of any flouting of military authority.

10. The absence of any threat to a military post.

11. The absence of any violation of military property.

12. The offense's being among those traditionally prosecuted in civilian courts.

In *Uhlman* the Court of Military Appeals applied these factors and found that all twelve factors weighing in favor of trial by a civilian tribunal rather than court-martial were met. The Court rejected the argument that there was a military victim, finding that the serviceman from whom the check was stolen and whose signature was forged thereon was not the victim, because he incurred no liability under the Colorado Commercial Code. The victim was either the bank or the civilian business enterprise which cashed the check.

In *United States v. Morriseau*, 19 U.S.C. M.A. 117, 41 C.M.R. 17 (1969), and *United States v. Frazier*, 19 U.S.C.M.A. 40, 41 C.M.R. 40 (1969), the Court based its hold-ing that off-base forgery of stolen U.S. Treasury checks was service-connected on the fact that the accused used their military status to cash the checks. In *Morriseau*, the check was stolen from a fellow serviceman. Chief Judge Quinn concurred in the results noting that when the offense is committed against a serviceman, the act is service-connected and that the offense in that case was further connected with the military because the stolen check was a military payroll check. In Judge Quinn's opinion its forgery involved the integrity of military property within the meaning of *O'Callahan v. Parker, supra.* Judge Ferguson dissented, finding that the forgeries were not service-connected. In *United States v. Uhlman, supra,* the Court of Military Appeals overruled *Morriseau* as being in error in drawing no analytical distinction between forgery and uttering a forged instrument and stated that the Court expressed no opinion as to whether use of military status alone made an uttering offense service-connected. The offense in *Uhlman* did not involve a military payroll check and the Court did not mention Judge Quinn's observations or decide that forgery of such a check was not service-connected.

The Court of Military Appeals recently stressed that *Relford* makes clear the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue. *United States v. Moore*, No. 31,176, —— M.J. —— (U.S.C.M.A. 16 July 1976). Application of the factors utilized by the Supreme Court in *O'Callahan v. Parker, supra,* and *Relford,* in the case *sub judice* reveals the following. At the time the offenses were committed appellant was an unauthorized absentee from his unit. The offenses were committed off-base at places within our territorial limits in peacetime not under military control. The offenses were unrelated to any military duties of appellant. Since the offenses come within the purview of 18 U.S.C. § 495, they are cognizable in the U.S. district courts. Forgery offenses are among those traditionally prosecuted in the civilian courts. Although the offenses present no threat to the security of a military post, it

cannot be said that they involve no flouting of military authority and no military victim. Clearly the offenses involve the integrity of military property. For court-martial jurisdiction to exist there does not have to be a victim of the accused's offense who has suffered personal harm as a result of the crime. So called victimless offenses are still crimes because the community is harmed. *See United States v. Sexton,* 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974). But there is a very real military victim and a substantial military interest in prosecuting forgery of military payroll checks.

When military payroll checks which are the property of the U.S. Government are stolen from its possession prior to delivery to the payees, the Government is liable to the payees for the amounts due them. Forgery of endorsements subjects the Government to the risk of financial detriment when the forged checks are presented for payment and a substantial administrative burden if it is to escape ultimate liability.

In *United States v. Uhlman, supra,* the Court found that all twelve factors listed in *Relford* weighed in favor of trial by a civilian tribunal. In the case *sub judice* we find that four factors weigh in favor of military jurisdiction, eight against. In *Relford,* the Supreme Court found seven factors weighing against military jurisdiction but held that nevertheless, there was court-martial jurisdiction. The Court stressed the obvious and essential military interest in the security of persons and property in the military enclave and noted the positive implication in *O'Callahan v. Parker, supra,* that factors such as geographical and military relationships have an important and significant bearing on the issue of military jurisdiction.

There is a vital military interest in the security and integrity of military property. Forgery of endorsements on military payroll checks is harmful to the military community in general and may impose substantial administrative burdens. We find the threat to the security and integrity of military property inherent in the forgery of military payroll checks to be of paramount importance and conclude that by reason of their significant military relationship the forgery offenses in the present case are service-connected. Declining to follow *United States v. Dunagan, supra,* we hold that the military court had jurisdiction over these offenses.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Senior Judge NEWTON and Judge FULTON concur.