**UNITED STATES, Appellee,**

v.

**Raymond SIMS, Private, U. S. Army, Appellant.**

**No. 30,517.**

**SPCM 10516.**

U. S. Court of Military Appeals.

Feb. 2, 1977.

Captain John R. Osgood argued the cause for Appellant, Accused. With him on the brief were Colonel Alton H. Harvey and Lieutenant Colonel James Kucera.

Captain John F. Schmutz argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Donald W. Hansen, Major Steven M. Werner, Major John T. Sherwood, Jr., and Captain John F. Depue.

Opinion of the Court

PERRY, Judge:

The appellant was tried by general court-martial at Fort Lee, Virginia, and convicted of failure to repair (two specifications), dis-

---

1. United States v. Sims, 50 C.M.R. 401 (A.C.M. R.1975).

2. In light of our disposition in this case, we need not address the issue specified from the

obedience of an order from his superior noncommissioned officer (two specifications), forgery of a money order (two specifications), and receiving stolen property, in violation of Articles 86, 91, 123 and 134, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 923, and 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for 4 months, forfeitures of $175 per month for 4 months, and reduction to the lowest enlisted grade. The convening authority approved the findings and sentence without modification. The Army Court of Military Review has affirmed.[1]

The appellant contends before this Court that the court-martial which tried him lacked jurisdiction over the two forgery offenses (Charge III and its specifications), as they were not "service connected." O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). It is a claim which we believe to be correct.[2]

The facts of record indicate that in March 1974, at Fort Lee, Virginia, the appellant purchased from a fellow soldier on post two blank $50-money orders for $75, knowing that that soldier had earlier stolen the money orders from the barracks locker of another soldier at Fort Lee. Thereafter the appellant departed Fort Lee on an authorized weekend pass for his hometown of Spartanburg, South Carolina. In Spartanburg, the appellant took the money orders to a local liquor store where he cashed them, writing his own name as purchaser and signing as payee. Although the liquor store clerk apparently knew him, the appellant exhibited his military identification card when cashing the checks.

Upon these facts, the Government urges three alternate bases for finding jurisdiction in the court-martial to try the two forgery offenses, all of which, it is argued are viable and any of which they claim is sufficient to resolve the dispute: (1) that

bench: On a blank money order is the signature of the utterer sufficient to create the crime of forgery?

the "preponderant elements of the total criminal enterprise" occurred on post, permitting a conclusion that jurisdiction exists over all the offenses in that "total criminal enterprise"; (2) that the victim of the forgeries was a fellow serviceman, which, the Government claims, is an adequate, independent basis for jurisdiction;[3] and (3) the appellant abused his military status by using his military identification card as a "moving force" in facilitating the cashing of the checks, another "automatic jurisdiction" theory.

■ The opinion of the Court of Military Review disposed of the appellant's claim of lack of jurisdiction principally on the concept of "preponderant elements" of "the total criminal enterprise." In the words of the court:[4]

This Court, in the exercise of its special expertise has been developing a line of cases which permit identification of a set of operative facts we will denominate here as the description of the total criminal enterprise. When the preponderant elements of that enterprise have occurred in a military context, its burdens fall upon service persons or the Government, and military discipline is adversely affected, any one act essential to the progress of the enterprise is triable by court-martial.

Thereafter, with the following evaluation, the Court of Military Review found that the court-martial possessed jurisdiction over the forgeries which occurred in the civilian community of Spartanburg, South Carolina:[5]

That act was the conclusion of a criminal enterprise begun in the military community, had material adverse consequences in the community when committed, was criminal under the Uniform Code of Military Justice, and its trial in a military forum was more appropriate than trial in the state court.

We are mindful of the manner in which the Army Court of Military Review has spoken to the issue of "service connection" in its cited cases.[6] In the period of time immediately following *O'Callahan*, an opinion lacking truly meaningful guidelines, this theory was not without merit. The same may be said of the cases where an accused's abuse of his military status was the "moving force" in facilitating the crime's commission—*i. e.*, use of military I.D. card to cash a forged check or money order.[7] However, as with the "military victim" test we addressed in *United States v. Hedlund*, 2 M.J. 11 (1976), we believe that any merit they may have had as viable standards to be applied to such disputes was negated by the opinion of the United States Supreme Court in the subsequent case of *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).[8]

---

3. We have recently rejected a similar argument in *United States v. Hedlund*, 2 M.J. 11 (1976). In cases where the only service connection urged is the military status of the victim of the offense, "[t]hat, alone, is not enough." *United States v. Wilson*, 2 M.J. 24, 26 (1976) (footnote omitted).

4. *United States v. Sims, supra* at 407.

5. *Id.* at 408.

6. *Id.* Those cases are *United States v. Snyder*, No. 421134 (A.C.M.R. Aug. 21, 1969); *United States v. Weidner*, 40 C.M.R. 865 (A.B.R.1969); *United States v. Herring*, 43 C.M.R. 627 (A.C.M.R.1970); and *United States v. Butler*, 41 C.M.R. 620 (A.C.M.R.1969). This concept of "preponderant elements of the total criminal enterprise" must be distinguished from situations where the inquiry is whether there is service connection over a specific offense when the preponderant elements of that offense occurred on post, but continued off post, as in *United States v. Crapo*, 18 U.S.C. M.A. 594, 40 C.M.R. 306 (1969). *See United States v. Wills*, 20 U.S.C.M.A. 8, 42 C.M.R. 200 (1970).

7. *See United States v. Wolfson*, 21 U.S.C.M.A. 549, 45 C.M.R. 323 (1972); *United States v. Haagenson*, 19 U.S.C.M.A. 332, 41 C.M.R. 332 (1970); *United States v. Peterson*, 19 U.S.C. M.A. 319, 41 C.M.R. 319 (1970); *United States v. Fryman*, 19 U.S.C.M.A. 71, 41 C.M.R. 71 (1969); *United States v. Hallahan*, 19 U.S.C. M.A. 46, 41 C.M.R. 46 (1969); *United States v. Frazier*, 19 U.S.C.M.A. 40, 41 C.M.R. 40 (1969); *United States v. Peak*, 19 U.S.C.M.A. 19, 41 C.M.R. 19 (1969); *United States v. Morisseau*, 19 U.S.C.M.A. 17, 41 C.M.R. 17 (1969).

As we held in *United States v. Moore*, 1 M.J. 448, 450 (1976):

> What *Relford* makes clear is the need for a detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, was not deemed constitutionally appropriate by the Supreme Court. It no longer is within our province to formulate such a test.

This exercise must be on a case-by-case, offense-by-offense basis. *See United States v. Hedlund, supra.*

■ Like the Supreme Court majority in *O'Callahan*, our view of the facts of this case reveals the presence of all twelve *Relford* factors [9] leading to a determination of non-service connection over the two forgery offenses: [10] (1) The appellant was properly away from his installation on an authorized weekend pass; (2) The forgeries were committed away from the post in Spartanburg, South Carolina; (3) They were committed in a place not under military control; (4) They occurred in South Carolina, a place without our territorial limits and not in an occupied zone of a foreign country; (5) They took place in time of peace and had no relation to the war-making power; (6) The crimes were unrelated to the appellant's military duties; (7) The victim at the time of the offenses was not engaged in the performance of any military-related duty; (8) The civilian courts were present and open to try these offenses; (9) The crimes were unrelated to military authority and involved no flouting thereof; [11] (10) The offenses involved no threat to the military post, as the receipt of the stolen money orders did; (11) There was no violation of military property; and (12) The offenses—forgery—are among those traditionally prosecuted in civilian courts and are not peculiarly military in nature.

The decision of the Army Court of Military Review is reversed. The findings as to Charge III and its two specifications are set aside and that charge is dismissed. The record is returned to the Judge Advocate General for transmittal to the Army Court of Military Review for action on the sentence consistent with this opinion.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

For the reasons set forth in my dissent in *United States v. Uhlman*, 1 M.J. 419, 421 (1976), I would sustain the exercise of court-martial jurisdiction as to the two specifications of forgery. On the authority of *United States v. Jackson*, 13 U.S.C.M.A.

8. The Government has argued that the jaundiced eye with which the Supreme Court viewed the military justice system in *O'Callahan* has been materially altered and that the more recent opinions in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); and *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), reflect a respect for the system and a confidence in this Court's capabilities to supervise it in a manner to insure that justice prevails and that rights are protected. While we do not differ materially with Government counsel in their reading of these cases, we cannot agree that they, sub silentio, amount to an overruling of *O'Callahan* and *Relford*. We believe that if, and when, the Supreme Court intends to overrule *O'Callahan* and *Relford* and to expand the jurisdiction of a military criminal tribunal, it can and will do so in terms as explicit as those it used to restrict that jurisdiction. Until then, we must be content to express any misgivings or disagreements in opinions which, nonetheless, conform in disposition to the holdings of the Supreme Court. *See United States v. Heflin*, 23 U.S.C.M.A. 505, 506, n. 6, 50 C.M.R. 644, 645, 1 M.J. 131, 132 (1975).

9. *Relford v. Commandant*, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

10. It must be remembered that these criteria are being applied only to the two alleged forgeries. No contest has been made over military jurisdiction of the receipt of stolen property (the two blank money orders).

11. The mere display of appellant's military identification card did not flout military authority and did not confer court-martial jurisdiction. *United States v. Uhlman*, 1 M.J. 419 (1976).

66, 32 C.M.R. 66 (1962), I would answer in the affirmative the specified issue of whether forgery was committed by the accused in completing a stolen blank money order, by inserting his name as purchaser and payee in the appropriate blanks on the order. Consequently, I would affirm the decision of the United States Court of Military Review.