UNITED STATES, Appellee,

v.

Private First Class Elliott R. MIXSON, SSN 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, United States Army, Appellant.

CM 429866.

U. S. Army Court of Military Review.

14 July 1977.

Colonel Alton H. Harvey, JAGC, and Captain John R. Osgood, JAGC, were on the pleadings for appellant.

Major Steven M. Werner, JAGC, Captain Richard S. Kleager, JAGC, and Captain Richard A. Kirby, JAGC, were on the pleadings for appellee.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

COOK, Senior Judge:

Appellant was convicted on 12 April 1973 of possession, sale and conspiracy to sell heroin. The first two crimes were laid under Article 134, Uniform Code of Military Justice (UCMJ) and the third under Article 81, UCMJ (10 U.S.C. §§ 934 and 881, respectively). The first review of this case by this Court commanded a new review and action by a different convening authority. The second review by this Court resulted in an opinion which was set aside by the Court of Military Appeals on 10 February 1976. It remanded the case to this Court with direction that we hold it awaiting its decision in *United States v. McCarthy; United States v. Courtney; United States v. Jackson,* and *United States v. Graves.*[1] The

*Jackson* opinion definitively determined the question regarding the maximum imposable sentence for the instant case and we are now at liberty to complete our review.

### I

The pertinent facts are as follows. Prior to 12 January 1973, Private Leo Frederick purchased heroin from a fellow soldier, Private First Class Richard King, on two occasions. These were $20.00 sales. Appellant was not a party to either sale. On 12 January 1973, Frederick and King, driving in Frederick's car, met with Carl V. Harrell. Unbeknownst to King, Frederick was a CID informant and Harrell was a CID agent. This meeting occurred on post at Fort Bragg. Harrell inquired as to how much heroin he could get for $240.00, which he displayed to King. King responded "I'll get you a quarter piece." Leaving Harrell, who retained the $240.00, King directed Frederick to an off-post trailer park. King entered a trailer and returned with appellant, Mixson. All three drove across the road to a phone booth where the appellant made a telephone call. Mixson was heard arguing over the phone about a purchase of heroin. The discussion concerned the amount of heroin he could purchase for $240.00 and whether the seller would let him have any without an immediate cash payment. On completing the call, appellant returned to the car and directed Frederick to drive to an apartment building some distance away. Appellant, at his insistence, entered the building alone and returned in about 30 minutes, whereupon Frederick asked him if he had "the real stuff" and appellant replied "yes." Mixson then directed Frederick to a girlfriend's house where appellant and King left the car and entered the house. King soon reappeared but returned repeatedly to the door of the house to urge Mixson to "Hurry up or we'll be late." Appellant, Frederick and King then drove to Fort Bragg. During the trip, appellant stated, "We're going to have to hurry up,

1. *See,* respectively, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976); 1 M.J. 438 (1976); 3 M.J. 101 (C.M.A. 1977); 3 M.J. 186 C.M.A. 19 May 1977).

we have to return the guy's money in about 30 minutes. I want you to take me back there so I can give him his money and then you can drop me off at my girlfriend's house because we're going to have a party there." When the trio arrived at Fort Bragg, they rendezvoused with Harrell. King delivered the 2.39 grams of heroin to Harrell and received $240.00 in exchange. During this transaction, appellant remarked that the heroin was real "good stuff" and that it could be cut again and resold for $500.00. There is no evidence that appellant handled either the money or the drugs on post.

As a result of appellant's activities, he was charged with the sale of heroin to Harrell on post, the possession of heroin off post, and for conspiring with King to sell heroin. We must decide whether the trial court had jurisdiction over the offenses. We shall proceed, therefore, to the offense-by-offense determination suggested by the United States Court of Military Appeals in *United States v. Sims*, 25 U.S.C.M.A. 290, 294, 54 C.M.R. 806, 810, 2 M.J. 109, 112 (1977).

## II

■ As the sale of heroin occurred entirely on post, we have no difficulty in finding a sufficient jurisdictional nexus for that offense. And, although not determinative, we note appellant did not contest the court's jurisdiction over this offense either in the court below or before this Court.

## III

■ Concerning the off-post possession of heroin, we do not find any evidence which would permit a legal conclusion that such possession was service connected so as to sustain military jurisdiction. We are not

prepared to hold that off-post possession of contraband by a serviceman, without more, establishes jurisdiction.[2] Because there is nothing in the record which indicates that appellant knew, at the time he possessed the heroin in question off post, either the identity or the location of the ultimate buyer, we are unable to connect appellant's off-post possession with the later on-post sale for jurisdictional purposes. Consequently, considering the 12 *Relford* factors[3] we feel compelled to dismiss this specification for want of jurisdiction.

## IV

■ The conspiracy charge presents us with a more intractable problem. The offense of conspiracy requires an agreement to commit an offense, plus the performance of an act to effect the object of the conspiracy.[4] In this case, the conspiracy charge alleges that "in order to effect the object of the conspiracy [appellant] did on 12 January 1973, make a telephone call and then direct . . . Frederick to an apartment . . . in order to procure the . . . heroin." Both of the above-stated overt acts occurred off post. Thus, if the conspiracy had ended upon completion of those acts, that offense would not be service connected and jurisdiction would not obtain.

■ However, the offense of conspiracy is continuous so long as overt acts in furtherance of its purpose are done, as every overt act is deemed to be a renewal of the unlawful agreement.[5] Here the unlawful agreement was renewed by the trip to post and by the actual sale of heroin. The *Manual* itself provides that "the commission of the intended offense may also constitute

---

**2.** *Cf. United States v. Tucker*, 24 U.S.C.M.A. 311, 52 C.M.R. 22, 1 M.J. 463 (1976).

**3.** *Relford v. Commandant*, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

**4.** Article 81, Uniform Code of Military Justice.

**5.** 15A C.J.S. Conspiracy § 35(2) (1967) citing *United States v. Ferrara*, 458 F.2d 868 (2d Cir. 1972), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed. 343 (1972); *United States v. Jacobs*, 451 F.2d 530 (5th Cir. 1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972), *reh. denied*, 405 U.S. 1049, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972).

the overt act which is an element of the conspiracy to commit that offense."[6]

⬛ We find from our examination of the entire record,[7] therefore, that the conspiracy offense continued up to, and including, the commission of the sale offense.

⬛ A Federal court has jurisdiction over a conspiracy offense if an overt act was committed within the court's jurisdiction, even though the conspiracy was entered into outside the jurisdiction. *Rivard v. United States*, 375 F.2d 882 (5th Cir. 1967), *cert. denied*, 389 U.S. 884, 88 S.Ct. 151, 19 L.Ed.2d 181 (1967). Similarly, in the instant case, although the agreement and several overt acts occurred off post, the overt acts which occurred on post provide sufficient service connection on which to bottom a finding of jurisdiction in the court which tried appellant for the conspiracy.

### V

⬛ The finding of guilty of Specification 1 of the Charge is set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms only so much of the sentence as provides for a dishonorable discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1.

Judge DRIBBEN and Judge DeFORD concur.

---

6. Paragraph 160, Manual for Courts-Martial, United States, 1969 (Revised edition).

7. The government is not limited at trial to proving only the overt acts pleaded in the charge, but may introduce evidence of any overt act [*Reese v. United States*, 353 F.2d 732 (5th Cir. 1965); *Finley v. United States*, 271 F.2d 777 (5th Cir. 1959), *cert. denied*, 362 U.S. 979, 80 S.Ct. 1065, 4 L.Ed.2d 1014 (1960)], and this Court may examine the whole record before it to determine the terms and objects of the conspiracy. *United States v. Kidd*, 13 U.S.C.M.A. 184, 32 C.M.R. 184 (1962).