UNITED STATES, Appellee

v

ROBERT M. WOLFSON, Second Lieutenant, U. S. Army, Appellant

21 USCMA 549, 45 CMR 323

No. 25,210

July 28, 1972

*Captain Denis E. Hynes* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue,* and *Captain Terrence Ahern.*

*Captain Raymond Michael Ripple* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson, Captain Glenn R. Bonard, Captain Steven Mallis,* and *Captain Benjamin P. Fishburne, III.*

## Opinion of the Court

QUINN, Judge:

On the ground that the offenses are not "service connected," the accused challenges the exercise of court-martial jurisdiction as to seven of the charges of which he still stands convicted.

In O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969), the Supreme Court determined that under the United States Constitution offenses committed in the civilian community by military personnel, which are cognizable in the civilian criminal courts, are not triable by a court-martial unless they have "service connection" or "military significance." This Court first applied the *O'Callahan* ruling in United States v Borys, 18 USCMA 547, 40 CMR 259 (1969). In the cases that followed, certain differences of opinion were exposed as to the sufficiency of various circumstances to satisfy the require-

ments delineated in *O'Callahan* for constitutional exercise of court-martial jurisdiction. See United States v Peterson, 19 USCMA 319, 41 CMR 319 (1970); United States v Snyder, 20 USCMA 102, 42 CMR 294 (1970). Disposition of this case does not require review of those differences. Suffice it that this Court has determined that incidental identification of the accused in the criminal transaction as a member of the Armed Forces, by itself, is insufficient to establish the requisite service connection or military significance for military trial. As a minimum, it must further appear that the accused's military status was the "'moving force' in [the] commission" of the offense. United States v Peterson, supra, page 321; United States v Haagenson, 19 USCMA 332, 333, 41 CMR 332 (1970).

All offenses concern the issuance of bad checks in violation of Article 123a, Uniform Code of Military ▌ Justice, 10 USC § 923a. Five of the checks were cashed at J. C. Penney Stores in the civilian community. No check bore any indication on its face that the accused was a member of the military service, but on the back of each was the imprint of a Penney's charge card, which listed an account number and the accused's name as "Lt Robert M Wolfson." The Government argues that the accused's status as a member of the military was a material factor in the issuance of the charge card to the accused. Testimony by the assistant collection manager of Penney's regional credit office, however, indicates that while a credit applicant's rank in the Armed Forces may result in immediate preliminary approval, a military applicant, like a civilian applicant, has his application forwarded "to the credit bureau" for a check against his credit rating. More importantly, Penney's policy in regard to issuance of a credit card to a military person manifestly has nothing to do with its cashing of the check of a military person. As described by a credit clerk, who cashed one of the accused's checks, a check can be cashed, in an amount not to exceed $25.00, on the presentation of "two pieces of identification." These could consist of a Penney's charge card, driver's license, "or even your liquor card." A Penney's charge card by itself was not enough; "you still have to have another piece of identification." It is apparent, therefore, that in cashing a check, Penney's interest was not whether the person cashing the check was a member of the military establishment, but whether he was, in fact, the drawer of the instrument. We conclude, therefore, that whatever reliance Penney may have placed on accused's status as a member of the military service in granting him a charge card, that status was not the "moving force" on the occasions that he cashed his checks in its stores.

The other two checks in dispute were given to two loan companies in payment of installments ▌ on a loan made by each to the accused. The branch manager of one of the companies testified that the firm was "very big" in the "military lending" field, with approximately 35 to 45 percent of its customers consisting of military personnel, but he left no doubt that membership in the military, in general, or the accused's membership, in particular, was not significant in the making of a loan. Besides checking on the rank and estimated time of remaining service, the firm "check[ed] the credit references" listed by the applicant; ascertained whether "any letter of indebtedness or anything of this nature" was outstanding; and determined from its own research facilities whether any other loans were in effect. In the accused's case, his "financial statement" was specifically "analyz[ed]." While the testimony of the branch manager of the second loan company as to the circumstances that influenced approval of the loan in its case is not as extensive as that of the manager of the first company, it fairly appears that the accused's

**551**

membership and rank in the military were not the "moving force" in the making of the loan or in the acceptance of the bad check. The accused's misconduct in the issuance of these checks, therefore, was not, under United States v Peterson, supra, and United States v Hallahan, 19 USCMA 46, 41 CMR 46 (1969), triable by court-martial.

The decision of the United States Army Court of Military Review is set aside as to Additional Charge III and its specification, and Additional Charge IV, specification 1 and specifications 3 through 7, and the sentence. The findings of guilty as to the charges and specifications mentioned are set aside, and those charges and specifications are ordered dismissed. The record of trial is returned to the Judge Advocate General for submission to the Court of Military Review for reassessment of the sentence on the basis of the remaining findings of guilty.

Chief Judge DARDEN and Judge DUNCAN concur.