## UNITED STATES

v.

**Private First Class James R. ZORN, 465–90–2324, US Army, Troop B, 1st Squadron, 3d Armored Cavalry Regiment, Fort Bliss, Texas.**

#### SPCM 11927.

U. S. Army Court of Military Review.

Sentence Adjudged 8 Dec. 1975.

Decided 21 Oct. 1976.

Appellate Counsel for the Accused: CPT John C. Carr, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Keith H. Jung, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COSTELLO, Judge:

Appellant was convicted by a military judge sitting as a special court-martial of two instances of sale and two of possession of marihuana in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. Possible charging and multiplicity issues in this case are mooted by the limited sentencing power of this trial court, so the only issue before us is: Did the trial court have jurisdiction under the rule in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969)? Our answer is "Yes."

That answer flows from our examination of the evidence of record and a comparison of that evidence with the facts adduced by the Court of Military Appeals in *United States v. McCarthy*, 2 M.J. 26 (September 24, 1976) under the jurisdictional criteria adopted in *United States v. Hedlund*, 2 M.J. 11 (September 24, 1976) and *McCarthy*. We find that sufficient physical points of contact between this transaction and the military community exist to suggest strongly the exercise of military criminal jurisdiction over appellant. We also are of the opinion that this sort of transaction is an immediate, unacceptable threat to the readiness, morale and efficiency of military personnel.[1] In our judgment, " . . . the impact of the offenses on the combat effectiveness of the armed forces" is sufficiently deleterious to warrant the exercise of jurisdiction. *See Dooley v. Ploger*, 491 F.2d 608, 614 (4th Cir. 1974);[2] *United States v. Sims*, 50 C.M.R. 401 (A.C.M.R. 1975), *pet. granted*, 50 C.M.R. 903 (1975).

---

1. We do not stop to inquire into the deleterious effects of clandestine financial dealings in the ranks or the relative "merits" of various escapist ingestables. So long as there is a military interest sufficient to warrant criminal prosecution by the Army, somewhere, the Army is bound to act to discourage acquisition, distribution and use of the prohibited items by and among its personnel everywhere.

2. *Dooley* was an "exhaustion of remedies" case which began at Ft. Belvoir, VA. Except that the ingestable was cocaine, the facts are the same as here. *Dooley's* conviction and sentence were affirmed by this Court and became final in 1974.

This is not to be taken as an effort to rehabilitate the "military status" theory of jurisdiction adverted to by Chief Judge Fletcher in· *McCarthy* as an unwarranted extension of *Relford*.[3] *O'Callahan, supra,* showed clearly that something more than a prior enlistment or induction was necessary to raise military jurisdiction when an offense is committed at a point physically separate from an installation. That something more is the "pervasive" military interest identified in *McCarthy*. Ms. Op. at 6. Such military interest may be engendered by the potential for both harm to soldiers individually and for the disruption of essential military relationships which exists when traffic in contraband is conducted in and around a military unit. As Chief Judge Fletcher found in *McCarthy*, both the buyer and seller there " . . . knew that the next most likely recipient of their contraband would be fellow soldiers on post." Id.[4]

Briefly, the pivotal facts in this case show that one PFC Pankey was concerned about "drug problems in the barracks." He went to the military police for help and was recruited as an informant. On 4 August 1975, during duty hours, informant Pankey was with appellant Zorn in the latter's barracks. Their discussion of a purchase of marihuana had been started by Pankey at the direction of SA Presley of the CID following Pankey's initial report of Zorn's activities in the barracks. The conversation resulted in a trip downtown in uniform to the house of Zorn's girlfriend where he obtained three bags of marihuana which he delivered to Pankey. After a conversation about meeting for another buy the next day, Pankey left alone and delivered the marihuana to the CID observers who returned it to the post. The next day at noon, Pankey took Zorn from the post to his house downtown where they merely observed approximately 19 bags of marihuana in a suitcase. Pankey met Zorn later that same day off-post and bought five more bags under supervision of his CID superiors who later arrested Zorn.

Although we are appalled at the prospect of soldiers having increased opportunities to plot criminal misconduct on post with impunity and then to enter an unsuspecting civilian community to execute their criminal designs, the basis for our decision is not social policy. We must identify the paramount *military* interest described above. Considering the facts above in the light of 70 years of military experience, we conclude that the transactions here charged were in and part of the military community despite the evasive tactics of the perpetrators.[5]

Consequently, we hold that the facts of record disclose the existence of a paramount military interest in being the agency to make the government's response to appellant's misconduct. That interest was properly manifested by the institution of criminal charges because such paramount interest produces "jurisdiction." *O'Callahan, supra; Relford, supra; Dooley, supra.*

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge DONAHUE concur.

3. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

4. One obvious example of debilitating individual harm is the serum hepatitis common among those who scratch or inject controlled substances. As to harm to military relationships, plainly the "space cadet" will not respond to orders, and what if a sergeant becomes hostage to the private who is his pusher?

5. We emphasize the contextual or judgmental nature of this decision because the requirement for such decisions is clear from both *Dooley* and *McCarthy*. This Court is the appropriate fact-finding level on such issues. *See United States v. Jackson*, 2 M.J. 987 (A.C.M.R. 24 September 1976) [En Banc]. The particularly military context of the factual determination involved here further emphasizes the need for use of the specialized abilities of this Court. *See Jackson v. Taylor*, 353 U.S. 569, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957); *Dooley, supra*.