## UNITED STATES

### v.

**Specialist Six Robert Lynn HOPKINS, 217–70–0119, US Army, Headquarters and Headquarters Company, United States Army Garrison, Fort Bragg, North Carolina 28307.**

### CM 434274.

U. S. Army Court of Military Review.

Sentence Adjudged 22 Oct. 1975.

Decided 8 Nov. 1976.

---

3. *See* discussion in *United States v. Moore*, 24 U.S.C.M.A. 293, 294, 52 C.M.R. 4, 5, 1 M.J. 448 (1976).

Appellate Counsel for the Accused: CPT Jay Sacks Cohen, JAGC; CPT John R. Osgood, JAGC; MAJ Richard J. Goddard, JAGC; MAJ Joe D. Miller, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT William C. Kirk, JAGC; CPT John F. DePue, JAGC; MAJ Steven M. Werner, JAGC; MAJ John T. Sherwood, Jr., JAGC; COL Thomas H. Davis, JAGC.

## OPINION OF THE COURT

DONAHUE, Judge:

Contrary to his pleas, the appellant was convicted by a court with members of signing an official record with intent to deceive, larceny (four specifications), forgery, and falsely making a military identification card with intent to defraud in violation of Articles 107, 121, 123 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921, 923, and 934, respectively. The approved sentence is set forth above. Counsel for both parties presented excellent briefs and oral arguments to the Court.

### I. Jurisdiction

In his first assignment of error, the appellant maintains that the court lacked jurisdiction to try him for Specifications 1, 2 and 3 of Charge II, citing *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) and *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

The challenged specifications involve the appellant's off-post theft of $10,479.16 from Mrs. Puni Clouse, a civilian. An understanding of the factual background of the offenses is crucial to a determination of the jurisdictional issue.

The appellant as a preliminary to the theft offenses signed the false name of "Pun I. Clause" (identified as "Sp4 E4") to a Request for Identification Card (DA Form 428) and as a consequence was able to obtain from the Army an identification card bearing his picture and the name of the fictitious person, Pun I. Clause. Having completed the first phase of his plan, the appellant proceeded to three different branches of the North Carolina National Bank where accounts of Mrs. Puni Clouse

were held under the name "Pun I. Clause."[1] At these branches, the appellant used the false card for identification and withdrew the funds mentioned. Bank employees testified that they would have accepted other identification containing a picture, such as a driver's license.

The appellant maintains that the holding in *United States v. Wolfson*, 21 U.S.C.M.A. 549, 45 C.M.R. 323 (1972) precludes the exercise of military jurisdiction. We do not agree.

In *Wolfson* the backs of the questioned checks contained various information, including the accused's rank.[2] The victim was interested in whether the accused was who he purported to be (a charge account holder), not in his military status. In the case *sub judice*, the appellant's military status was a moving force in the commission of the offense. *See United States v. Peterson*, 19 U.S.C.M.A. 319, 41 C.M.R. 319 (1970). True, the bank employees, as in *Wolfson*, were primarily interested in whether the appellant was who he purported to be. However, unlike Lieutenant Wolfson, the appellant was not who he purported to be and, significantly, it was only through use of his real military status that he was able to assume a new military identity and perfect his crime. Although the bank employees indicated that they would have accepted other identification with a picture on it, such as a driver's license, the fact is that the appellant, due to his military status, was able to obtain what appeared to be an authentic military identification card but was not in a position to obtain an authentic appearing driver's license. His military status and manipulation of the military bureaucracy enabled the appellant to commit the offenses in question.[3]

1. The appellant knew through his relationship with Mrs. Clouse that her name was spelled wrong in her bank accounts. One of these branches was on-post and another's clientele was almost entirely military personnel and dependents.

2. There were two victims in *Wolfson*. We discuss here the checks to J. C. Penney Stores.

In *United States v. Uhlman*, 1 M.J. 419 (May 14, 1976), the Court found no jurisdiction over a forgery offense committed off-post. They noted, however, the distinction "between a forgery offense in which an accused is punished solely for falsely making a signature and an uttering offense in which an accused uses his military status in some way to facilitate the transformation of a forged negotiable instrument into cash or other goods or services." The Court expressed no opinion as to whether use of military status alone was sufficient to breathe jurisdiction into an uttering offense. Subsequently, in *United States v. Moore*, 1 M.J. 448 (July 16, 1976), Chief Judge Fletcher stated:

"Perhaps most significant in resolving the service-connection question here is the fact that the accused's military status, and that status alone, enabled Airman Moore to devise and implement his criminal scheme. Prior to Relford, Judge Darden observed in *United States v. Fryman*, 19 U.S.C.M.A. 71, 73, 41 C.M.R. 71, 73 (1969) that 'the positive misuse of . . . [military] status to secure privileges or recognition not accorded others causes the armed forces to have a substantial interest in punishing the abuse . . .'"

Not only was it the appellant's military status that was relied upon, the bank relied upon the integrity of the military ID system and it was the integrity of this system that was also jeopardized by this soldier's misconduct. This is a matter of substantial interest to military authorities.

The trial judge summed up the jurisdiction issue well in his special findings when he stated:

3. In the case of the specification involving the certificate of deposit (Specification 1, Charge II), the appellant was able to persuade the bank personnel that he met the "early withdrawal" requirement for an emergency by claiming that he was being transferred from one Army base to another. Transfer has a clear military connotation to people dealing with a preponderance of military personnel, as was the case here.

"The accused selected the means of committing the offense, i. e., reliance on military status, and cannot now escape the consequences of his own acts on the theory that he could have done it some other way."

We are satisfied that the service-connection questions were properly considered and disposed of by the military judge in accordance with the requirements of *O'Callahan v. Parker, supra*, and *Relford v. Commandant, supra*. We find the assignment of error to be non-meritorious.

## II. Speedy Trial

■ The appellant maintains that he was denied a speedy trial, citing *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).[4] We do not agree.

The appellant claims that *Burton* restraint commenced on 15 July 1975, the day he was restricted. The government claims that only the time commencing on 25 July 1975, the day the appellant was confined, should be counted. Selection of the first date would result in 93 days of *Burton* restraint as compared with 83 days under the second date.

■ Viewing the evidence of record, we find that appellant's *Burton*-type restraint began on 25 July 1975. Consequently, no presumption of a violation of Article 10, UCMJ, arises.

■ Even if this Court were to consider the *Burton* period of restraint to be 93 days, the appellant would not merit any relief. His offenses occurred at two widely separated locations, Fort Bragg, North Carolina, and vicinity, and in the Republic of Korea, which is the most remote area of significant troop concentration in the United States Army. Considering the complex offenses and the foreign country aspect of the case,

combined with the offenses having taken place in both the foreign country and in the United States, we hold that the passage of 93 days was not a denial of the appellant's rights under Article 10, UCMJ. *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). Unlike the situation in *United States v. Henderson*, 24 U.S.C.M.A. 259, 51 C.M.R. 711, 1 M.J. 421 (1976), here the government has shown the extraordinary circumstances necessary to rebut the *Burton* presumption.[5]

## III. Legality of Pretrial Confinement

■ The appellant claims his pretrial confinement was illegal because he was placed in administrative segregation. His theory is that the information upon which the decision was based was, at least in part, inaccurate and, therefore, the confinement authorities incorrectly concluded that the appellant was a high escape risk.

Our study of the record of trial convinces us that the appellant was, indeed, a high escape risk. Aside from that, all indications are that the decision to place the appellant in administrative segregation was made in good faith and was reasonable on the basis of the information then available to the authorities. We find the assignment of error to be non-meritorious.

## IV. Admissibility of Handwriting Exemplars

■ The appellant maintains that his handwriting exemplars should have been suppressed because they were the product of a defective warning under Article 31, UCMJ.

The appellant was advised under Article 31, including advice that he did not have to answer questions or say anything. In addi-

4. During the appellate proceedings before this Court, the appellant unsuccessfully moved to file an affidavit explaining the nature of his restriction. He claimed that the judge prevented him from presenting the evidence at trial. We have found that the appellant was not prevented from presenting the evidence at trial, and that his belated attempt to present the evidence to this Court is an inappropriate at-

tempt to add to the trial record that which could have been presented at the trial.

5. Henderson was confined for 132 days of which at least 113 were chargeable to the government. All of his offenses took place in one location, Okinawa. All the evidence was present in that one location.

tion, he was advised that anything he said or *did* could be used against him. Appellant maintains that the warning was defective because he was not specifically told that he did not have to "do anything."

We believe that a reasonable interpretation of the advice clearly demonstrates that the appellant was, in fact, warned that he did not have to do anything. The appellant's actions indicate that he understood the warning for it is noted that the entire purpose of the warning was in connection with the taking of the exemplars and prior to making his decision whether or not to furnish the exemplar he consulted with his lawyer. Implicit in this conduct is the realization that he was not bound to furnish the exemplars and he could exercise his right to refuse. In making his decision the only matter of consequence was the fact that they could be used against him.

*V. Submission of Issue of Voluntariness of Handwriting Exemplars to the Court*

After the judge denied the appellant's motion to suppress the handwriting exemplars, the defense counsel requested that the issue of their voluntariness be submitted to the members of the court. The judge denied the request.

Although the judge's denial was somewhat ambiguously expressed, we hold that his ruling was correct because the appellant had presented nothing that placed voluntariness in issue. Under the circumstances, the matter did not need to be submitted to the court. The only matter in issue was the adequacy of the Article 31 warning, a legal matter within the sole cognizance of the judge. We find the assignment of error to be non-meritorious.

*VI. Other Matters*

We have considered and find non-meritorious the appellant's assigned errors numbered IV, VI, VII, VIII and IX. The findings of guilty and approved sentence are affirmed.

Senior Judge CLAUSE concurs.

Judge COSTELLO concurs in the result.

The facts here permit the jurisdiction issue (Issue I) to be readily resolved by the analysis presented in *United States v. Sims*, 50 C.M.R. 401 (A.C.M.R.1975), *pet. granted*, 50 C.M.R. 903 (1975). *See also United States v. Zorn*, 2 M.J. 1012 (A.C.M.R. 21 October 1976). I agree with the opinion of the Court on Issues II–VI.