UNITED STATES

v.

Private E–2 Curtis FREEMAN, 272–50–3857, US Army, Headquarters and Headquarters Company, 11th Engineer Battalion (Combat), Fort Belvoir, Virginia 22060.

CM 434265.

U. S. Army Court of Military Review.

Sentence Adjudged 31 Oct. 1975.

Decided 16 Dec. 1976.

Appellate Counsel for the Accused: CPT Michael P. La Haye, JAGC; CPT Lawrence E. Wzorek, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT John F. DePue, JAGC; COL Thomas H. Davis, JAGC.

Before CLAUSE, DONAHUE and COSTELLO, Appellate Military Judges.

## OPINION OF THE COURT

COSTELLO, Judge:

Appellant was sentenced as stated above upon his conviction for three sales of LSD in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892. He challenges the jurisdiction of the trial court as to the last two transactions because they occurred off-post. We find that the criminal enterprise upon which appellant embarked had both military and civilian aspects, but that the controlling factors permit the exercise of military jurisdiction. Briefly, we find that the off-post actions were but mechanical parts of a total criminal enterprise conducted by military persons which began on-post and which continued to menace the military community centered thereat.

Appellant came to the attention of undercover military criminal investigator Diamond through reports from another soldier, Specialist 4 Jackson. Diamond had agreed to testify favorably at Jackson's forthcoming trial by court-martial in return for general information about drug-related activities in the military community centered at Fort Belvoir. Jackson named appellant as a supplier and member of the armed forces stationed at the Fort. He also introduced Investigator Diamond to appellant, whose duty position was driver of the post shuttle bus. Diamond posed as a civilian who had friends among the soldiers on the post and access to the installation as well. Appellant announced himself as a wholesaler who was not interested in any retail transactions "on the street."

After the introduction on the 25th of July, Diamond met appellant on his bus route the next morning and their first transaction, a sale of 48 units of LSD, occurred as the shuttle bus made its rounds.

After the first sale was completed and as appellant continued with his driving duties, he and Diamond made arrangements for further dealing. The next deal turned out to be 100 units of LSD transferred at appellant's off-post apartment two days later. That apartment was in an area close to the post where other military persons lived; the apartment itself was frequented by appellant's military friends. The third sale also occurred at that apartment after Investigator Diamond received an unexpected telephone call from appellant at Jackson's downtown apartment.

Although the situs of most of the activity in these transactions had shifted to the off-post quarters, the investigation which began on-post retained its military character. It began as an inquiry into the activities of military persons by military police and remained confined to that subject and context. There was no federal or local civilian police interest in the case.

Appellant's attack on the jurisdiction of the trial court relies primarily on *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28

L.Ed. 102 (1971) and *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). He asks us to return to the "ad hoc" approach to the determination of *O'Callahan* jurisdiction issues used in *United States v. Borys*, 18 U.S.C.M.A. 547, 40 C.M.R. 259 (1969). Appellant's brief also alerted us to the pendency of *United States v. McCarthy*, since decided and reported at 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976). *McCarthy* sustained the exercise of military jurisdiction in a drug case after a finding that ". . . the military community certainly had the overriding, if not exclusive, interest in prosecuting this offense." 2 M.J. at page 29. That finding followed the identification of "four factors" which generated a "pervasive" military interest.[1] The Court of Military Appeals instructed in *McCarthy* that other factors considered relevant by the Supreme Court in *Relford* and *O'Callahan, both supra*, are to be considered when appropriate, and that it is also import to ascertain ". . . whether the distinct military interest can be vindicated adequately in civilian courts." 2 M.J. at p. 28 [Citation omitted.]

■ We will dispose of this last consideration by assuming the outcome of the first. Given that there is a military interest in the drug-related conduct of soldiers within the penumbral military community sufficient to warrant the exercise of military criminal jurisdiction, it is plain that the civilian courts in 50 states cannot vindicate it. The variations in attitudes in the United States toward marihuana require no recitation here; appellant's own brief states that no penalty was established by the District of Columbia Code for the possession of LSD until 6 January 1975; and the variations of

penalties even where established within "federal" law are substantial.[2] Such variations in punishable conduct and in sentences mean that civilian courts cannot "vindicate" the legitimate interests of a widely dispersed community within which there is a uniform value system but a free and rapid exchange of news. Law for the American soldier must be the same in Athens as in Rome.[3]

We do not, however, need to assume the existence of military interest sufficient to warrant the exercise of jurisdiction here. That interest is manifest.

The relationship among appellant, Diamond and Jackson began in a duty situation. The first sale was entirely on-post, on the military bus appellant drove; the second was completed, except for the mechanics of exchange, on-post while both participants were in the same duty situation. The third sale was the product of appellant's call from his own apartment to Jackson's, i. e., from one soldier's home to another. What is significant here is that Diamond was patently a person who moved freely about the installation and within the penumbral community when appellant sold him designedly resaleable amounts of LSD.

The principal point then is that these were not offenses which occurred while off-duty servicemen were ". . . blended into the general civilian populace."[4] Servicemen in the penumbral community usually travel about freely in their uniforms, drive automobiles plainly marked with installation-entry bumper stickers, wear their hair differently and tend to associate with other soldiers. There are many other things which set apart the soldier who lives off-post, but we need not parse the sociolo-

---

1. Briefly, those factors were on-post formulation of the intent, a substantial connection between the defendant's military duties and the crime, duty performance at the time of the crime and the threat to the military community.

2. "Federal" law includes Title 33 of the DC Code, Title 21 of the U.S.Code and Chapter 27, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev)).

3. This is true if those cities are the ones in the Eastern United States or the Mediterranean littoral.

4. *McCarthy*, 2 M.J. at p. 29. The Court used this phrase in rejecting portions of an earlier opinion which suggested that drug related events among servicemen were always service connected because such activity had "a special military significance."

gy here. Appellant placed distributable quantities of LSD in circulation in a group limited to those immediately or closely associated with the installation. Except for one woman whose status was unclear, no member of the group identified at trial was unassociated. Consequently, there was no less military significance in this transaction than in a similar one conducted in a family housing area on-post, but even farther away from the installation flag pole and retreat cannon than many "downtown" apartments.

As noted above, both the Supreme Court and Court of Military Appeals have required an *ad hoc* approach in these cases. Although it is premature to draw final conclusions, our experience since *McCarthy* is enlightening; there has been a fair sprinkling of outcomes. We had approximately 66 cases remanded to us or which we held awaiting that decision. Of those, 38 were affirmed outright. *E. g. United States v. Zorn*, 2 M.J. 1012 (ACMR 21 October 1976). Charges were dismissed outright on *McCarthy* grounds in 11 others. The balance (17) were remanded to the trial level for limited hearings on the jurisdiction issue with authority to dismiss if none is found. *E. g. United States v. Hood*, 2 M.J. 1036 (A.C.M.R. 11 November 1976). *Zorn, supra*, and most of our other affirmances involved activities in the penumbral community similar to those involved in the second and third charges here. Activities of that sort have also been frequently persuasive before our brothers in the Navy and Air Force. *See*, for example, *United States v. Turner*, 54 C.M.R. 213, 1 M.J. 1035 (N.C.M.R.1976) and *United States v. Pittman*, 54 C.M.R. 262, 2 M.J. 698 (A.F.C.M.R.1976).

■ The judicial approach in this group of cases has proceeded from a threat analysis based on the circumstances in which the offense occurred rather than on the offense itself.[5] Assessment of that threat has led a comfortable majority in each of the three Courts of Military Review cited above to the judgment that the ". . . impact of the offenses on the combat effectiveness of the armed forces is sufficiently deleterious to warrant the exercise of jurisdiction." *Zorn, supra*, 2 M.J. at page 1012, *citing Dooly v. Ploger*, 491 F.2d 608, 614 (4th Cir. 1974). It is precisely this sort of judgment by us which the Court of Military Appeals mandated in *McCarthy*, when the Court spoke of "re-evaluation" in Footnote 1. The unanimity of the most active intermediate courts promotes confidence in the judgment of all. Therefore, we hold that the exercise of military criminal jurisdiction here was properly predicated on the existence of a criminal enterprise among persons associated in the penumbral community at a military installation under circumstances which made the criminal enterprise an unacceptable threat to the combat effectiveness of personnel at the installation.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge DONAHUE concur.

---

5. *McCarthy* rejected the idea of *United States v. Beeker* that drug offenses, *per se*, were of "special military significance." 2 M.J. at 29. When we speak of "threat" here we are thinking of the potential for spreading the use of drugs which comes from the existence of a ready supply; the impairment of the ability of persons off-duty to respond to recalls; and the destruction of essential military relationships which comes from the rise of hostage relationships that invert the normal military hierarchy. *See Zorn, supra*, n. 4.