# UNITED STATES

### v.

**Private First Class John A. JOHNSON, 434–92–8493, U. S. Army, Company D, 1st Squadron, 3d Armored Cavalry Regiment, Fort Bliss, Texas.**

### SPCM 11811.

U. S. Army Court of Military Review.

Sentence Adjudged 25 Sept. 1975.

Decided 30 Dec. 1976.

---

Appellate Counsel for the Accused: CPT Peter V. Train, JAGC; CPT Buren R. Shields, III, JAGC; LTC John R. Thornock, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard A. Cefola, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; COL Thomas H. Davis, JAGC.

Before JONES, Senior Judge, and FULTON and FELDER, JJ.

## OPINION OF THE COURT

JONES, Senior Judge:

Having held this case in abeyance awaiting the decision of the United States Court of Military Appeals in *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976), we now review the record in light of that decision.

The appellant was convicted, contrary to his pleas of not guilty, of possessing three kilograms of marihuana in violation of Article 134. Uniform Code of Military Justice, 10 U.S.C. § 934. He contends before this Court as he did below that the special court-martial had no jurisdiction to try him for the offense which occurred off-post.

The evidence establishes that the appellant entered a fellow serviceman's off-post mobile home unannounced and asked for "three" or "three kis", presumably marihuana. Two servicemen accompanied appellant to the trailer but remained in the car outside. The host serviceman (seller), also a specialist four and a member of the same squadron as appellant, placed three bricks of marihuana in a bag and handed them to the appellant. After checking the bricks the appellant departed the trailer. The marihuana was worth more than $400.00 but no price was mentioned and no money changed hands.

The appellant's sudden entry interrupted negotiations between the seller and other servicemen in the trailer over the sale of marihuana. One of the servicemen was an undercover CID agent. That sale, also of 3 kilo, was consummated almost immediately after the appellant's departure. After the sale, the undercover CID agent identified himself and was in the process of apprehending the seller when the appellant reentered the trailer.[1] Seeing the agent with

---

1. The reason for the reentry is disputed. The appellant claimed he was returning the marihuana after changing his mind about getting involved further with drugs. The prosecution maintained that he went back inside either because he saw the civilian police outside or

his gun drawn (his badge was also displayed but appellant denies seeing that), the appellant dropped the bag of marihuana and left hurriedly.[2] He was apprehended about 30 minutes later and taken to the CID office at Fort Bliss.

In making our analysis of the issue of court-martial jurisdiction, we must follow the criteria and considerations outlined in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and further applied by the United States Court of Military Appeals in *United States v. McCarthy, supra.* We choose not to enumerate those criteria and considerations here but rather to focus on the critical factors relating to service connection or the lack thereof found in most off-post drug offenses. Because of the long recognized adverse impact on the armed forces of drug use by servicemen,[3] the military interest in the trial becomes paramount when those factors are present.

■ In our review of the jurisdictional issue, although we are restricted to the facts in evidence, we may apply logic and common sense to reach conclusions which flow from those facts. In this case, from the manner of appellant's entry into the trailer, the way he asked for three kilos of marihuana, and the way it was handed to him without negotiation over price or without money changing hands, we may conclude that appellant had dealt with the seller before and the two trusted each other in drug dealings. From the amount of marihuana involved in the sale to appellant, the amount in the sale to the undercover CID agent, and the amount the seller had in his cache, we may conclude that the seller was a major distributor. From the fact that all persons involved in the two sales were servicemen and were known to each other as such (at least three were in the same squadron) and from the conclusion above that appellant had dealt with the seller before, we may conclude that the seller's operation encompassed, although possibly not exclusively, an extensive number of sales to servicemen. From the amounts of marihuana involved in the two sales to servicemen we may conclude that further distribution was contemplated. Finally, from the very fact that a serviceman's principal contacts among persons likely to buy marihuana are other servicemen, we may conclude that at least part of the marihuana transferred in the two purchases here would have found its way to other soldiers at Fort Bliss. This is reinforced by the fact that two soldiers were waiting in the car outside the trailer for appellant's return.

The recitation above leads unerringly to the conclusion that what we have in this case is a large scale drug operation among

because he wanted to get another look at the CID agent, whom he had met previously.

2. The appellant claimed he dropped the bag and fled because he thought the undercover agent was robbing the seller but the prosecution argued that he left quickly when he saw his friend being arrested.

3. "The seriousness of the [drug] problem is indicated by information presented before congressional committees to the effect that some 86,000 servicemen underwent some type of rehabilitation for drug abuse in fiscal years 1972 and 1973, and only 52% of these were able to return to duty after rehabilitation. . . . It is not surprising, in view of the nature and magnitude of the problem, that in *United States v. Beeker*, 18 U.S.C.M.A. 563, 565, 40 C.M.R. 275, 277 (1969), the Court of Military Appeals found that 'use of marihuana and narcotics by military persons on or off a military base has special military significance' in light of the 'disasterous effects' of these substances

'"on the health, morale and fitness for duty of persons in the Armed Forces."'" *Schlesinger v. Councilman*, 420 U.S. 738, 760 n. 35, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975).

"The increased incidence of drug abuse in the Armed Forces poses a substantial threat to the readiness and efficiency of our military forces." *Committee for GI Rights v. Callaway*, 171 U.S. App.D.C. 73, 83, 518 F.2d 466, 476 (1975).

"We are not unmindful of the disasterous effects occasioned by the wrongful use of narcotics on the health, morale and fitness for duty of persons in the armed forces." *United States v. Williams*, 8 U.S.C.M.A. 325, 327, 24 C.M.R. 135, 137 (1957).

"The conferees of both houses were unanimous in their concurrence that drug abuse is a profoundly serious national problem that is having a grave effect on the Armed Forces." Conference Report No. 92–433, U. S. Code Congressional and Administrative News, 92d Congress, First Session, 1971, Vol. 2, p. 1505.

572

servicemen, with soldiers from Fort Bliss as the ultimate recipients of a portion of the marihuana. The main supply and distribution point was off-post, probably of necessity because of the size of the operation, but it nevertheless impacted directly upon the military command. We therefore find the military interest in this case to be so significant and so paramount to civilian interest that court-martial jurisdiction attaches. The military interest goes not only to the activity of the seller, the larger dealer, but to the distributor one step removed, the appellant.

 Another issue warranting brief comment is the statement by trial counsel in his argument on sentence:

"We ask your Honor to insure that conduct by this accused and others in his place will not happen as it did on the 19th of August."

Although this is subject to the interpretation that it is violative of the proscription on arguing general deterrence, as set forth in *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976), we do not view it as such when the entire argument is considered. *See United States v. Wilson*, 2 M.J. 683 (A.F.C.M.R. 15 Oct. 1976). Even if we assume for the purpose of this review that the comment was error, we can find no prejudice to the appellant in view of the sentence imposed.

The findings of guilty and the sentence are affirmed.

Judge FULTON concurs.

FELDER, Judge, dissenting:

When a serviceman's conduct is punishable in both military and civilian courts, the military has jurisdiction to try him if; (1) its interest in deterring that conduct is distinct from and greater than that of civilian society because of the impact of the offense on military discipline and effectiveness; and (2) the distinct military interest cannot be vindicated adequately in civilian courts. *See Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Otherwise, the offense is not service connected and the military has no power to try him.

In applying the twelve considerations enumerated in *Relford v. Commandant*, 401 U.S. 355, 365, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), to determine service connection, jurisdiction has not been established in this case. The appellant was properly absent from Fort Bliss when the offense was committed; the offense occurred in El Paso, Texas, while he was off duty; it was committed during peacetime; there was no connection between the appellant's military duties and the crime; the possession of marihuana is an offense that is prosecuted regularly in civilian courts and those courts were available; and there was no threat to the security of Fort Bliss or its property or any flouting of military authority.[1]

The evidence of record indicates that the civilian authorities were vitally concerned about illegal drug trafficking in El Paso, Texas. Special agents of the Texas Department of Public Safety, in cooperation with military criminal investigators, had under surveillance the local residence where the appellant received the marihuana. In fact, the appellant was apprehended by civilian agents about two miles from the residence. At the time of his arrest, he was in a probationary status, pending charges in a civilian court in El Paso, Texas. The appellant was enrolled in a civilian rehabilitative program as a condition of his probation and the possession of marihuana violated the probationary terms. These important facts, which were ignored by the majority, indicate that the concern of the military was not distinct[2] and that the military interest

---

1. In my opinion, the flouting of military authority connotes more than the mere violation of any provision of the Uniform Code of Military Justice or an Army regulation. I believe it implies a course of criminal conduct that singularly insults or makes a mockery of the military.

2. The record is devoid of any evidence that off-post possession of marihuana has special military significance. The military community mirrors the social problems of the civilian community. Drug abuse is a national calamity that affects not only the health and welfare of the Armed Forces but of all Americans. To resolve

could have been adequately vindicated in the civilian courts.

In an effort to affirm jurisdiction, the majority reached certain factual conclusions as to the appellant's previous dealings with drugs and his contemplated disposition of the marihuana. Their conclusions are not supported by the evidence and exceed the bounds of permissible inferences. For example, it is undisputed that the two soldiers, who accompanied the appellant, were unaware of his criminal endeavor. Yet, the majority inferred that they were eventual recipients of the marihuana. This is unwarranted speculation. In *United States v. McCarthy*, 25 U.S.C.M.A. 30, 33, 54 C.M.R. 30, 33, 2 M.J. 26, 28 (1976), similar facts were supported by the evidence. Jurisdiction is a matter that must be established affirmatively by competent evidence. *Cf. United States v. Russo*, 23 U.S.C.M.A. 511, 50 C.M.R. 650, 1 M.J. 134 (1975).

The only factor supportive of service connection in this case is the military status of the participants and that alone is insufficient to sanction court-martial jurisdiction. *United States v. Wilson*, 25 U.S.C.M.A. 26, 28, 54 C.M.R. 26, 28, 2 M.J. 24 (1976); *United States v. Hedlund*, 25 U.S.C.M.A. 1, 6, 54 C.M.R. 1, 6, 2 M.J. 11, 14 (1976). In resolving the question of military jurisdiction over an offense, the situs of the offense is far more significant than the status of the parties involved. *United States v. Tucker*, 24 U.S.C.M.A. 311, 52 C.M.R. 22, 1 M.J. 463 (1976). Therefore, I conclude that there is a lack of jurisdiction in this case.

the jurisdictional dispute in favor of the military, it is insufficient to point to its unique mission; instead, the military must show a distinctive and greater concern for off-post possession of marihuana.