UNITED STATES, Appellee,

v.

Private (E–2) Elizabeth SHEFFIELD, SSN 420–74–3400, United States Army, Appellant.

CM 435366.

U. S. Army Court of Military Review.

19 Aug. 1977.

Lieutenant Colonel John R. Thornock, JAGC, and Captain Demmon F. Canner, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, and Captain Richard A. Kirby, JAGC, were on the pleadings for appellee.

Before CLAUSE, and COSTELLO and TALIAFERRO, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

Appellant was convicted of two instances of delivering heroin, possession of marihuana, making a false official statement, and of a larceny in violation of Articles 134, 107 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 934, 907 and 921, respectively. She is attacking the heroin convictions on the basis that the deliveries occurred in downtown Washington, D.C., and were not subject to military criminal law. We disagree.

Although the deliveries occurred "off post," they were planned and paid for on post. Appellant lived on Fort Myer but worked at the Pentagon Telecommunications Center. Incident to that assignment she was cleared for access to classified information through Top Secret. When approached by her barracks-mate to procure heroin for a military acquaintance, appellant conducted the business part of the transaction in the barracks, then drove downtown to the Whitelaw Hotel to "make the buy." The deliveries to Private Billie Jean Kelley occurred on the street outside the hotel.

The controlling factors in this case occurred on post; only the mechanical parts of the total criminal enterprise were completed downtown. We have sustained the exercise of jurisdiction in apparently similar cases. *United States v. Freeman*, 54 C.M.R. 863, 2 M.J. 1074 (A.C.M.R.1976). See *United States v. Johnson*, 54 C.M.R. 865, 2 M.J. 569 (A.C.M.R.1976); *United States v. Kelly*, 54 C.M.R. 338, 2 M.J. 1029 (A.C.M.R.1976). Those cases sustained the exercise of military jurisdiction over offenses involving LSD and marihuana; here the substance was heroin. The consequences of heroin use are manifest. The threat posed by heroin use extends not only to the military post or unit to which the individual is assigned, but also to the success of the military mission itself. *See Peterson v. Goodwin*, 512 F.2d 479 (5 Cir. 1975); *United States v. Burston*, 54 C.M.R. 315, 2 M.J. 1015 (A.C.M.R.1976). We conclude that the exercise of jurisdiction in this case was proper. *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (C.M.A.1976).

Government counsel, by a Motion to Stay Proceedings, requested this Court to withhold judgment in those pending cases which

might be affected by a decision in certain "certified cases" that *McCarthy, supra*, was not to be applied retroactively.* Our decision is that the exercise of military jurisdiction here was proper regardless of whether or not *McCarthy* should be applied only prospectively. Therefore, our Stay as to this case is vacated.

Accordingly, the findings of guilty and the sentence are *AFFIRMED*.

COSTELLO, Judge, concurring:

I agree with all that is said above, but would add that such cases will be less troublesome to decide from now on.

A new dimension has been added to our grasp of the relationship between heroin and the military community. Speaking of the culpability of a transferor whose recipient dies from an overdose of the transferred substance, the Court of Military Appeals has said recently that "the furnishing of a restricted drug was an act inherently dangerous to human life.", *United States v. Moglia*, 3 M.J. 216 (C.M.A.1977) [*Citing cases*, including an earlier decision of this Court, *United States v. Uno*, 47 C.M.R. 683 (A.C.M.R.1973)]. The Court went on to recognize that "heroin is both a dangerous and a restricted drug in the military" and that, in that case, "[the] transfer of the heroin enabled the deceased to use the contraband." *Id.* at 217.

Not every transfer of a narcotic drug will both endanger life and facilitate use by the transferee, but the probabilities of the former were so high as to prompt judicial notice by the court in *Burston, supra.* I have not seen many impediments to use after transfer and doubt that there are many. Accordingly, it is appropriate to examine the impact of the addition of this new dimension to a view of the jurisdiction question presented by *United States v. McCarthy, supra*, and the Supreme Court cases cited therein.

The first impact of *Moglia* is an enlargement of the concept of a military interest "distinct from and greater than that of civilian society . . ." *McCarthy*, 2 M.J. at 28, *quoting Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Part of this interest is the responsibility of soldier-transferors for the continued good health of their customers. As will be seen below, all civilian purveyors do not have that burden. A second part of the greater military interest rises from the *Moglia* court's finding that transfer enables use by the recipient of a substance which is "obviously . . . a dangerous and a restricted drug in the military." *Moglia* at 217. It needs no proof to say that the use of drugs by the custodians of society's right to exercise violence is potentially more harmful than such use in the community at large. The final point is related to the second, but independent of *Moglia*. Military personnel are not only fiduciaries of the society's capacity for violence but also of other components of the national welfare. Specifically, low ranking persons such as this appellant may have access to critical information concerning the national defense and national policy by virtue of job positions and security clearances. Such persons ought to be inhibited from criminal conduct which threatens directly their capacity to function in their assignments, but only the military system can reach all aspects of their behavior. Accordingly, I conclude that there was a greater interest in the military community in this case than that held by the civilians, and that critical portions of that interest are distinct from the civilian interest.

The second jurisdiction criterion affected by *Moglia* is the likelihood of vindication of the military interest in civilian courts. There is such a degree of disparity in state practice regarding the trial of drug purveyors for consequent injuries to their customers that we may confidently say that the likelihood is not ascertainable on any nation-wide basis. *Compare People v. Cline*, 270 Cal.App.2d 328, 75 Cal.Rptr. 459 (1969) *with People v. Pinckney*, 32 N.Y.2d 749, 344 N.Y.2d 643, 297 N.E.2d 523 (1973). *See* Annotation, 32 A.L.R.3d 589 *et seq.*; 40 C.J.S. Homicide § 62, n. 37.5.

---

* The Motion was filed *sub nom. United States v. Amado, et al.*

In these circumstances I would hold, as did the *McCarthy* court, that "the military interest in this offense is pervasive. . . . " Therefore, the exercise of jurisdiction was proper.