260

UNITED STATES, Appellee,

v.

Robert Lynn HOPKINS, Specialist Six,
U. S. Army, Appellant.

No. 33,580.
CM 434274.

U. S. Court of Military Appeals.

March 20, 1978.

Captain Jay Sacks Cohen argued the cause for Appellant, Accused. With him on the brief were Colonel Robert B. Clarke, Lieutenant Colonel John R. Thornock, and Captain Buren R. Shields, III.

Captain Douglas P. Franklin argued the cause for Appellee, United States. With him on the brief were Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Ma-jor Steven M. Werner, and Captain William C. Kirk.

Opinion of the Court

PERRY, Judge:

Upon his conviction for signing a false official record, larceny (4 specifications), forgery,[1] and falsely making a military identification card with intent to defraud, in violation of Articles 107, 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 921, 923, and 934, the appellant was sentenced to a dishonorable discharge, confinement at hard labor for 8 years, total forfeitures of pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the findings and the sentence. The United States Army Court of Military Review has affirmed. United States v. Hopkins, 54 C.M.R. 352, 2 M.J. 1032 (A.C.M.R.1976).

The appellant contends that the court-martial lacked jurisdiction over the first three of the four larceny offenses of which he was convicted. Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). Upon consideration of the recent precedent of this Court, we find this claim meritorious.

The specifications at issue charge that the appellant, in three separate transactions at three separate branches of the same North Carolina bank, stole a total of $10,-479.16 from a former girlfriend named Puni Clouse. He did so by negotiating a certificate of deposit belonging to her and by making two separate withdrawals from her savings account. In each instance, the appellant was required to furnish some form of identification. While any reliable mode would do, such as a driver's license containing a picture, the appellant instead presented a false military identification card bearing his own picture and the name of "Pun I.

---

1. The military judge dismissed three other charged forgeries. The court concluded that, as those specifications lacked any service connection, there was no jurisdiction in the court to try their alleged commission. Relford v. Commandant, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

Clause"—the name under which his girlfriend's accounts were held.[2] All three bank branches were in the civilian community off post.[3]

The linchpin of the Court of Military Review's conclusion of service-connection is use of an authentic looking, false military identification card to precipitate the transactions involved and that "it was only through use of his real military status that he was able to assume a new military identity and perfect his crime." *United States v. Hopkins, supra*, 54 C.M.R. at 354, 2 M.J. at 1034. However, the notion that the mere use of a military identification card to identify one's self somehow automatically vests a court-martial with jurisdiction over any crime committed in the civilian community was rejected in *United States v. Sims*, 25 U.S.C.M.A. 290, 54 C.M.R. 806, 2 M.J. 109 (C.M.A.1977). And *how* he *got* the card—that is, the appellant's use of his military status to obtain a false military identification card—would, of course, be material to a service-connection inquiry concerning the offense of falsely making such a card. But it is irrelevant in the instant appeal involving the larcenies of these monies.

Moreover, the use of a military identification card under circumstances such as these does not even satisfy any of the oft-quoted 12 *Relford* criteria.[4] What must be carefully distinguished is an instance in which a serviceperson fraudulently uses a military identification card to obtain a privilege available only to a serviceperson, *see United States v. Moore*, 24 U.S.C.M.A. 293, 52 C.M.R. 4, 1 M.J. 448 (1976), and one such as this in which the card simply was an incidental means of identifying a person as the person represented, *see United States v.*

*Vick*, 4 M.J. 235 (C.M.A.1978), on a par with any of several other means of doing so, *see United States v. Wolfson*, 21 U.S.C.M.A. 549, 45 C.M.R. 323 (1972).

An examination of the 12 *Relford* criteria,[5] as well as the 9 affirmative considerations discussed therein,[6] causes our conclusion that the appellant's court-martial lacked jurisdiction to try him for the three larcenies complained of.

The decision of the United States Army Court of Military Review is reversed as to Specifications 1, 2, and 3 of Charge II, and as to the sentence. Those specifications are dismissed. In all other respects, the decision below is affirmed. The record is returned to the Court of Military Review for reassessment of the sentence.

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

While the accused might have used other means of identification that the bank might perhaps have accepted as a predicate for the transfers it made, the fact is the accused used a military identification card, which carries its own special indicia of authenticity, as an instrument to carry out the crimes. In my view, therefore, there was sufficient military connection to the offenses to make them triable by court-martial. See my dissents in *United States v. Sims*, 25 U.S.C.M.A. 290, 54 C.M.R. 806, 2 M.J. 109 (1977), and *United States v. Uhlman*, 24 U.S.C.M.A. 256, 51 C.M.R. 635, 2 M.J. 419 (1976).

I would affirm the decision of the Court of Military Review.

---

**2.** The victim had no relationship with any branch of our armed forces. The false military identification card was the product of the appellant's own earlier actions—separately charged in these proceedings—of signing the false name of "Pun I. Clause," identified as a Specialist 4, to a Request for Identification Card.

**3.** While the Court of Military Review stated that one of the branches was on post, *United States v. Hopkins*, 54 C.M.R. 352, 353 n. 1, 2

M.J. 1032, 1034 (1976), there is no support in the record for such a finding. The Government in its pleadings before this Court acknowledges as much.

**4.** *Relford v. Commandant, supra*, 401 U.S. at 363, 91 S.Ct. 649.

**5.** Id.

**6.** *Id.*, at 367–369, 91 S.Ct. 649.